[No. 33125-6-I.    Division One.    December 15, 1994.]

CHESTER HOBERG, ET AL, *Respondents*, v. THE CITY OF
BELLEVUE, ET AL, *Appellants*.

*Richard B. Sanders*, for respondents.
*Patrice C. Cole*, for appellants.

BECKER, J. — We affirm the Superior Court's decision that the City of Bellevue must grant a variance to Chester and Janice Hoberg allowing them to build a house on their nonconforming lot. The denial of the variance by the City's Board of Adjustment resulted from an interpretation of the Bellevue Land Use Code that is contrary to law.

I

Under the Bellevue Land Use Code (BLUC), the minimum lot size for single-family medium density housing is 10,000 square feet. In July 1990, the Respondents (Hoberg) purchased a nonconforming triangular-shaped vacant lot measuring 7,391 square feet on Bellevue Way S.E., where they planned to build a house. The code requires a front yard setback of 60 feet and a rear setback of 25 feet. The small size, atypical shape and sloped terrain, in combination with the setback requirements, constrict the buildable area of Hoberg's lot to a triangle of 624 square feet. What Hoberg could build on his lot, without a variance, would be a narrow 3-story tower, inconsistent with the character of surrounding houses.

The front yard setback is not subject to variance. Hoberg applied to the City's Design and Development Department for a variance reducing the rear yard setback from 25 to 15

feet. The requested variance would virtually double the buildable area on the lot. The buildable area would then extend into slopes at the back of the lot. These slopes fall within the City's designation as "protected area" because of their steepness or potential instability.

The Design and Development Department approved Hoberg's application for the 10-foot reduction in the rear setback. One condition of its approval of the variance was that Hoberg obtain a permit from the Storm and Surface Water Utility, a different department, to exempt part of the slopes on his lot from protected area status. Such an exemption may be obtained if the applicant meets certain requirements to assure long-term slope and soil stability with minimum maintenance.

Because citizens submitted objections, the application went on to the City's Board of Adjustment for a public hearing. The code requires the board to vote, publicly, on each of eight criteria for variances set forth in the code. On October 1, 1991, the board denied the variance after failing to achieve a majority vote on two of the eight criteria, A and E.

Hoberg sought a writ of review challenging the board's denial of his variance application. The Superior Court held a hearing on August 12, 1992, and remanded the matter to the board for entry of specific findings on criteria A and E.

On June 23, 1993, the court again reviewed the board's proceedings, including the specific findings, and ordered the City to grant Hoberg's variance application subject to the conditions initially recommended by the Design and Development Department. It is from this order and decision that the City appeals.

## II

■■ Interpretation of the code's variance criteria is a matter of law, which the appellate court, like the trial court, reviews de novo under the contrary to law standard. *Freeburg v. Seattle*, 71 Wn. App. 367, 371, 859 P.2d 610 (1993); RCW 7.16.120(3).

■■ The City urges us to defer to the board's interpretation of the variance ordinance. Considerable judicial defer-

ence should be given to the construction of an ordinance by the agency charged with its enforcement. *Citizens for a Safe Neighborhood v. Seattle*, 67 Wn. App. 436, 440, 836 P.2d 235 (1992), *review denied*, 120 Wn.2d 1020 (1993). But this rule of statutory construction applies only when the law being interpreted is ambiguous, and even then, the agency's interpretation is not "absolutely controlling" on the court. *Hama Hama Co. v. Shorelines Hearings Bd.*, 85 Wn.2d 441, 448, 536 P.2d 157 (1975). It is ultimately for the court to determine the purpose and meaning of the law. *Overton v. Economic Assistance Auth.*, 96 Wn.2d 552, 555, 637 P.2d 652 (1981). Having given due weight to the board's construction of the variance ordinance, we conclude criteria A and E are not susceptible to the board's interpretation of them.

Criterion A permits a variance if it

will not constitute a grant of special privilege inconsistent with the limitation upon uses of other properties in the vicinity and Land Use District in which the property on behalf of which the application was filed is located[.]

BLUC 20.30G.140(A).

■ Criterion A restricts the granting of use variances. The City argues that relief from setback is among the use variances that criterion A prohibits. This interpretation is contrary to law. Relief from setback is a classic example of an area variance, as opposed to a use variance. An area variance is one which does not change the specific land use but provides relief from dimensional requirements such as setback, yard size, lot coverage, frontage or height restrictions. 3 Robert M. Anderson, *American Law of Zoning* § 20.07 (3d ed. 1986); 4 Washington State Bar Ass'n, *Real Property Deskbook* § 80.40, at 80-25 (2d ed. 1986); *see, e.g., Douglass v. Spokane*, 25 Wn. App. 823, 826, 609 P.2d 979, *review denied*, 94 Wn.2d 1006 (1980).

In seeking relief from a dimensional requirement, Hoberg was not proposing a use inconsistent with the single-family medium density classification for his property. The board's own findings state that Hoberg's proposed residential use is consistent with the City's comprehensive plan, "encouraging

development which is of residential scale and character along Bellevue Way S.E."

■ The City further argues that the words "limitation upon uses" in criterion A include the protected area status of the slopes at the back of the lot. Criterion A cannot be read as authorizing the board to reject a variance in order to protect the slopes. Allowing the buildable area to extend into the slopes grants Hoberg no special privilege as compared to neighboring property owners. Under the code, any property owner may seek an exemption from protected area status from the Storm and Surface Water Utility. This procedure is separate from a variance application. The Storm and Surface Water Utility, not the board, has the responsibility of deciding whether to permit construction on the slopes of Hoberg's lot. An area variance does not become a use variance, forbidden by criterion A, merely because it is conditioned on obtaining a further permit that depends on the stability of soils at the building site.

In short, Hoberg's application did not propose a use variance. The board erred in denying Hoberg's application as contrary to criterion A.

Criterion E permits a variance if

[t]he special circumstances of the subject property are not the result of the actions of the applicant[.]

BLUC 20.30G.140(E).

Criterion E applies to circumstances such as those in *Lewis v. Medina*, 87 Wn.2d 19, 548 P.2d 1093 (1976). In *Lewis*, the court upheld the denial of a variance where the hardship was self-inflicted because the owners of the property had participated in the subdivision that created the substandard parcel. *Lewis*, at 23.

Here, the Board concluded that the lot's special circumstances resulted from Hoberg's actions because it found he either knew or should have known about the setback requirements in 1990 when he bought the lot.

■ Buying a lot with awareness of its special circumstances does not, by itself, cause those special circumstances. If it did, the purchaser of a nonconforming lot could

never be granted an area variance. Yet, the very purpose of a variance ordinance is to allow exceptions, typically to area requirements, so that in appropriate circumstances, nonconforming lots can be developed. *Real Property Deskbook* § 80.35, at 80-20; § 80.39, at 80-25; *see, e.g.*, RCW 36.70.020(14).

The law further recognizes that

> if the prior owner would have been entitled to a variance at the time . . . the zoning ordinance restriction was enacted, the right is not lost to a purchaser simply because he bought with knowledge of the regulation. In other words, because a purchaser of property acquires no greater right to a variance than his predecessor, he should not be held to acquire less.

(Footnotes omitted.) 3 Arden H. & Daren A. Rathkopf, *Zoning and Planning* § 38.06, at 38-75 (4th ed. 1988).

Accordingly, we hold the mere fact that a purchaser buys with actual or constructive knowledge of area restrictions does not, without more, justify the denial of a variance. A subsequent purchaser can stand in the shoes of the original owner with respect to a variance, so long as the claimed hardship does not arise out of the purchase itself. *E.g., Marlowe v. Zoning Hearing Bd.*, 52 Pa. Commw. 224, 233, 415 A.2d 946, 950-51 (1980).

Whether criterion E should require the denial of a variance to a purchaser from an unrelated vendor whose action caused the lot to be nonconforming is a question not before us. In the present case, there is no evidence that either Hoberg or his predecessors subdivided the lot from a larger parcel under the present code, or did anything to create the lot's special circumstances. Neither the requirement for a minimum lot size of 10,000 square feet nor the setback requirements were in effect when former owners created the lot in 1946.

The board erred in denying Hoberg's application as contrary to criterion E. The City does not dispute that the application met the six other criteria.[1]

---

[1] The ordinance provides, "The decision maker may approve or approve with modifications an application for a variance from the provisions of the Land Use

## III

Both parties claim procedural irregularities. Hoberg assigns error to the board's meeting to draft findings in executive session with the City's attorney. The City objects to the trial court's order that permitted Hoberg to inquire into the proceedings of the executive session.

■ Our decision in favor of the variance rests on the merits of the Board's decision, not the procedural aspects. It does not depend upon how the executive session was conducted, who was present there or what was said. The court is not obliged to decide all the issues raised by the parties, but only those that are determinative. *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 165, 795 P.2d 1143 (1990). Accordingly, review of the claimed procedural errors is unnecessary.

Hoberg's request to dismiss the City's appeal for an insufficient record is denied. The trial court's order requiring the board to issue the variance subject to the conditions initially recommended by the Department is affirmed. Hoberg, as the party who has substantially prevailed on appeal, is awarded costs pursuant to RAP 14.2.

PEKELIS, C.J., and GROSSE, J., concur.

---

Code . . .". BLUC 20.30G.140. The City agrees that the use of "may" rather than "shall" in the ordinance does not give the City discretion to deny a variance arbitrarily when the application meets all eight criteria.