[No. 39321-9-I.  Division One.  January 20, 1998.]

PETER McTAVISH, ET AL., *Respondents*, v. THE CITY OF BELLEVUE, *Respondent*, NORTH WOODRIDGE CREST ASSOCIATION, *Appellant*.

*Peter J. Eglick* of *Helsell, Fetterman, L.L.P.,* for appellant.

*Richard L. Andrews, City Attorney,* and *Lori M. Riordan, Assistant,* for respondent City of Bellevue.

*John T. Washburn* of *Foster Pepper & Shefelman,* for respondents McTavish.

COLEMAN, J. — Peter and Jean McTavish wish to build a 52-unit residential development on a 21.9 acre parcel at 1121 Lake Hills Connector, Bellevue, Washington. The McTavish property is zoned R-3.5 with over 93 percent of the land area designated as protected areas or protected area setbacks under the sensitive area overlay district regulations of the Bellevue Land Use Code (LUC).

The sensitive area overlay district, LUC part 20.25H, establishes special standards and procedures for developing any site in a special flood district or coal mine area or which contains wetlands, riparian corridors, steep slopes, or slopes of over 15 percent with colluvial soils. LUC 20.25H.070. To compensate the landowner for being unable to build upon the protected area, a variable density credit is awarded to the buildable area. Any site that contains more than 90 percent protected area is eligible for a Protected Area Development Exception (PADE), LUC part 20.30P. LUC 20.25H.140, 20.30P.115. A PADE permits both the limited use and disturbance of a protected area as well as the modification of the dimensional and density standards of the sensitive area overlay district (SAO). LUC 20.30P.120.

North Woodridge Crest Association ("Woodridge"), a group of property owners next to the McTavish parcel, requested a code interpretation concerning the maximum allowable density for the McTavish property. The director of Bellevue's Department of Community Development ("director") issued code interpretation 95-01 stating that properties with over 90 percent protected area are not subject to the on-site density credit development factor of the SAO. LUC 20.25H.100(D). The director's position was that the SAO density credit chart did not apply and that the PADE gave the director the discretion to approve or approve with modifications an application for a PADE if the application fulfilled the seven enumerated criteria of LUC 20.30P.140.

Woodridge appealed the city's interpretation to a hearing examiner, who modified the director's code interpretation. The examiner required the calculation and indirect use of the SAO density credit as a guide in evaluating the appropriate level of development. On appeal, the Superior Court reinstated the director's interpretation and stated that the hearing examiner's decision was an erroneous interpretation of the law because it created new criteria to the LUC.

Woodridge now appeals the Superior Court's ruling, claiming that it erred by failing to give the required deference to the hearing examiner's decision and that the examiner's decision correctly construed the LUC. Both parties agree that the issue before this court is the proper interpretation of the SAO and PADE provisions when applied to property with more than 90 percent protected area.[1]

■■■ Because this issue arose from a request for a code interpretation, our review is limited to the correct legal interpretation of the PADE ordinance. Construction of a statute is a question of law which we review de novo under the error of law standard. *Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n*, 123 Wn.2d 621, 627, 869 P.2d 1034, (1994); *Hoberg v. City of Bellevue*, 76 Wn. App. 357, 359, 884 P.2d 1339 (1994) (Interpreting land use code's variance criteria is a matter of law which the appellate court, like the trial court, reviews de novo under the contrary to law standard.). If the statute is ambiguous, the agency's interpretation of the statute is accorded great weight in determining intent. *Waste Management*, 123 Wn.2d at 628. Absent ambiguity, there is no need for an agency's expertise in construing the statute. *Waste Manage-*

---

[1]Accordingly, we deny the respondent's motion to take judicial notice of the hearing examiner's project decision applying the Superior Court's reinstatement of the director's interpretation to yet another project proposal by the McTavishes. The issue before us is limited to the legal interpretation of the ordinance as applied to property with greater than 90 percent protected area. The details of the McTavishes' current project proposal and judicial review of the administrative decisions concerning the proposal are not properly before this court.

*ment*, 123 Wn.2d at 628. Municipal ordinances are the local equivalent of a statute and are therefore evaluated using the same rules of construction. *City of Spokane v. Vaux*, 83 Wn.2d 126, 128-29, 516 P.2d 209 (1973).

■ In 1995, the Legislature passed the Land Use Petition Act, which requires courts to allow the proper level of deference to the construction of a law by a local jurisdiction with expertise in deciding whether the land use decision is an erroneous interpretation of the law. RCW 36.70C.130(1)(b). When a statute or ordinance is unambiguous, construction is not necessary as the plain meaning controls. *ARCO Prods. Co. v. Utilities & Transp. Comm'n*, 125 Wn.2d 805, 810, 888 P.2d 728 (1995); *State v. McCraw*, 127 Wn.2d 281, 288, 898 P.2d 838 (1995) (stating that the Supreme Court will not construe unambiguous language and that in judicial interpretation of statutes, the first rule is " 'the court should assume that the legislature means exactly what it says. Plain words do not require construction.' " (quoting *City of Snohomish v. Joslin*, 9 Wn. App. 495, 498, 513 P.2d 293 (1973))).

With respect to the standards used to approve development on property that is covered by more than 90 percent protected area, we find the SAO and PADE ordinances to be unambiguous. Thus, concerning the purely legal issue involved in the present case, we have considered the expertise of the director and the hearing examiner but decide the matter de novo. To put the issue in context, we summarize the pertinent provisions of the SAO and PADE ordinances and then discuss the actions of the director and hearing examiner.

The SAO applies to "development on any site which is in whole or in part mapped or defined as a sensitive area in the City of Bellevue Sensitive Area Notebook." LUC 20.25H.010. The SAO ordinance seeks to protect environmentally sensitive areas and natural conditions as well as the public health, safety and welfare. LUC 20.25H.030. The ordinance drafters addressed the landowner's countervailing property interests by providing a density bonus for

the buildable (nonprotected) portion of the property that is based upon the percentage of the site classified as protected. LUC 20.25H.100(D).

The maximum number of dwelling units permitted on a site containing protected areas is determined by multiplying the dwelling units (DU) per acre as zoned by the buildable area and adding the dwelling units per acre multiplied by both the protected area and the appropriate development factor from the density credit chart. LUC 20.25H.100(B), (D). In equation form the Maximum Dwelling Potential = [(DU/Acre)(Buildable Area)] + [(DU/Acre)(Protected Area)(Development Factor)]. LUC 20.25H.100(B).

The density credit chart provides no density credit for sites with protected area coverage of greater than 90 percent. LUC 20.25H.100(D). Instead of a fixed density credit, such properties qualify for a PADE. LUC 20.25H.140.

A PADE applies only to sites with greater than 90 percent protected areas and

> is a mechanism by which the City may approve limited use and disturbance of a protected area defined by LUC 20.25H.070 when no other use of the property constitutes a reasonable alternative. This approval also serves to modify the dimensional standards of LUC 20.20.010 and the dimensional and density/intensity standards of Part 20.25H LUC as necessary to accommodate the appropriate level of use or development.

LUC 20.30P.120. Apparently, the drafters recognized the uniqueness of properties with greater than 90 percent protected area and implemented PADEs to address the competing goals of protecting environmentally sensitive areas as well as the public health, safety, and welfare while ensuring that a constitutional taking does not occur.

As stated in the ordinance, PADEs are of two types. First, unlike the SAO which prohibits disturbance of protected areas, a PADE allows the city to approve limited use and disturbance of a protected area when no other use of the property constitutes a reasonable alternative. LUC

20.30P.120. However, developing protected areas is expressly limited to disturbing a maximum of 10 percent of the site. LUC 20.30P.140(C). Thus, with respect to the buildable area, a PADE ensures that an owner of property with greater than 90 percent protected area will not be allowed to build on more land than an owner of a similar size parcel not qualifying for a PADE.

Second, a PADE may modify the dimensional and density/intensity standards of the SOA. However, unlike the case for development of protected areas, there is no concrete mechanism to determine the appropriateness of a density or dimensional modification. Indeed, the lack of a concrete benchmark from which to review a density modification is the basis for this dispute.

The director in his code interpretation held that:

> [w]hen a Protected Area Development Exception is applied to a proposal, the Director will determine on a case-by-case basis the appropriate density pursuant to the decision criteria set forth at LUC 20.30P.140. The maximum allowable density would in no case exceed the maximum density allowed by the underlying zoning and any applicable bonus densities. The chart setting forth density limitations at LUC 20.25H.100 does not apply.

The hearing examiner modified the director's interpretation by replacing the second sentence of the director's interpretation with, "[i]n so doing, the Director will calculate the results of the formula of LUC 20.25H.100 at the 90% protected area level and use those results as a guide in determining the appropriate level of development." The hearing examiner explained his modification of the director's decision by stating that using the density from the underlying zoning code as a reference point for determining appropriate development could result in more intensive development on parcels qualifying for a PADE than would be allowed under the SAO. The hearing examiner stated that such a result was contrary to legislative intent.

■ ■ However, courts look first to the plain meaning of

words used in a statute to determine legislative intent. *Lacey Nursing Ctr., Inc. v. Department of Revenue*, 128 Wn.2d 40, 53, 905 P.2d 338 (1995). The plain language of the PADE ordinance does not support the examiner's mandate to use the density credit chart as a guideline for determining the appropriate level of development.

The PADE ordinance contains criteria that must be met for the city to approve a PADE. These criteria as reproduced below do not require the use of the SAO density credit chart.

> The City may approve or approve with modifications an application for a Protected Area Development Exception if:
>
> A. Limiting use of the property to those uses provided in LUC 20.25H.080.B is not reasonable given the physical characteristics of the property, its location and surrounding development potential; and
>
> B. The Protected Area Exception is the minimum necessary to fulfill the purpose of this part; and
>
> C. The proposal results in no more than 10 percent of the site being disturbed by structure or other land alteration including but not limited to grading, utility installation, and landscaping; provided, however, that if the subject property is a lot of less than 30,000 gross square feet, a total area of up to 3,000 square feet may be disturbed. . . .; and
>
> D. The proposal is compatible in design, scale and use with other development or potential development in the immediate vicinity . . .; and
>
> E. The proposal utilizes to the maximum extent possible the best available construction, design and development techniques which result in the least impact on the protected area; and
>
> F. The proposal incorporates the performance standards of LUC 20.25H.110 to the maximum extent possible; and
>
> G. The proposal is consistent with the purpose and intent of the Land Use Code . . . .

LUC 20.30P.140.

While a discrete benchmark for evaluating when density/

intensity modifications result in the minimum necessary to constitute an appropriate use would assist all parties in evaluating the appropriateness of a PADE application, the drafters did not provide such a benchmark. Rather, they deferred to the city to develop and use an appropriate mechanism in evaluating whether the PADE application and resulting density/intensity modification satisfied the listed criteria. We note that the Bellevue City Council always has the option of amending the PADE provisions to provide the director with greater guidance on the appropriate level of density/intensity modifications.

Because the text of the present ordinance is unambiguous in giving the director discretion, subject to the criteria of LUC 20.30P.140, to approve limited use and disturbance of a protected area, to modify the dimensional standards of the underlying zoning code, and to modify the dimensional and density/intensity standards of the SAO, we affirm the reinstatement of the director's code interpretation.

GROSSE and COX, JJ., concur.