11 P.3d 322 (2000)
102 Wash.App. 775
FABEN POINT NEIGHBORS; W. Hunter Simpson and Craig E. Tall, Respondents,
v.
CITY OF MERCER ISLAND, Pacific Properties, Inc., a Washington corporation; and Samis Foundation, Appellants.
No. 44847-1-I.
Court of Appeals of Washington, Division 1.
August 28, 2000.
Publication Ordered September 29, 2000.
*323 George Kresovich, Brian Todd, Hillis, Clark, Martin & Peterson, Seattle, for Appellants.
Glenn Amster, Lane Powell Spears Lubersky, John Boespflug, Seattle, for Respondents.
ELLINGTON, J.
This case presents a single issue of statutory construction. The Mercer Island City Council approved a subdivision on the basis that certain of the City's zoning code requirements had been superseded by the City's interim critical areas regulations, which control in the event of inconsistency. Because there is no inconsistency, and the subdivision does not satisfy the zoning code requirements, we affirm the superior court's reversal of the City's action approving the preliminary plat.

Facts
The property in question here is a 2.1 acre parcel located on the northwest tip of Mercer Island in an area known as Faben Point. Pacific Properties, Inc. applied to the City for preliminary subdivision approval on March 20, 1998. Pacific Properties proposed to create six lots, four on the waterfront and two inland. Each of the lots is slightly larger *324 than 15,000 square feet. The western boundary of the property is approximately 297 feet, along which the four shoreline lots range from approximately 69.5 to 80 feet in width.
The City of Mercer Island's zoning code provides that lots must be a minimum of 15,000 square feet, as well as meet certain minimum width and depth requirements. The City's interim critical areas regulations require that lots identify a 3,000-square-foot building pad. Of the six lots proposed by Pacific Properties, all six meet the zoning code's 15,000-square-foot lot requirement and the 3,000-square-foot building pad requirement, but four of the lots do not meet the code's minimum dimension requirement.
On June 17, 1998, the Planning Commission voted to recommend subdivision approval. On October 5, the Mercer Island City Council convened a public hearing to consider the Planning Commission's recommendations. After a one-month continuance, the City Council voted to approve the preliminary subdivision, and issued a notice of decision on November 16, 1998. Neither the Planning Commission nor the City Council prepared written findings or conclusions at the time of adoption.
Respondent Faben Point Neighbors (FPN) appealed the City's decision under the Land Use Petition Act (LUPA). On April 27, 1999, the trial court reversed the City's approval of the subdivision, concluding that the development violated the City's minimum lot dimension requirements, and that the City erroneously interpreted the law in determining otherwise. Pacific Properties appeals.

Discussion
A. Standard of Review
This action was filed under the Land Use Petition Act, RCW 36.70C, which provides for review of land use decisions. Tugwell v. Kittitas County, 90 Wash.App. 1, 7, 951 P.2d 272 (1997). In pertinent part, LUPA provides that a court may grant relief if the party seeking relief can establish that "[t]he land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise." RCW 36.70C.130(1)(b). In reviewing the City's decision, we sit in the same position as the trial court. Association of Rural Residents v. Kitsap County, 95 Wash.App. 383, 391, 974 P.2d 863, affirmed in part, reversed in part on other grounds, 141 Wash.2d 185, 4 P.3d 115 (2000).
Construction of a statute is a question of law and is reviewed de novo. McTavish v. City of Bellevue, 89 Wash.App. 561, 564, 949 P.2d 837 (1998). When a statute is unambiguous, construction is not necessary and the plain meaning controls. McTavish, 89 Wash.App. at 565, 949 P.2d 837. Where a statute is ambiguous, the agency's interpretation is accorded great deference in determining legislative intent. Waste Management of Seattle, Inc. v. Utilities & Transp. Comm'n, 123 Wash.2d 621, 628, 869 P.2d 1034 (1994). Absent ambiguity, however, there is no need for the agency's expertise. Waste Management, 123 Wash.2d at 628, 869 P.2d 1034. The courts retain the ultimate authority to interpret a statute. Waste Management, 123 Wash.2d at 627, 869 P.2d 1034. Because municipal ordinances are the equivalent of a statute, they are evaluated under the same rules of construction. McTavish, 89 Wash.App. at 565, 949 P.2d 837.
B. Interpreting the Zoning Code and Interim Critical Areas Regulations
At issue is the proper interpretation of two provisions of the Mercer Island Development Code (MIDC). The proposed subdivision is located in an R 15 zone, in which the City's zoning ordinance prescribes the following requirements:
The lot area shall be not less than fifteen thousand (15,000) square feet. Lot width shall be not less than ninety (90) feet and lot depth shall be not less than eighty (80) feet. An eighty (80) foot by ninety (90) foot rectangle shall be provided on each lot, unless the rectangle requirement is waived during subdivision approval.
MIDC § 19.04.0504(E).
The subdivision is also subject to the City's interim critical areas regulations, adopted by *325 ordinance in 1992, which requires that all subdivisions on Mercer Island:
[i]dentify for each lot a building pad equal to 3,000 sq. ft. or 30% of the minimum lot size required by the zone in which a subdivision is proposed, whichever is less.
Interim Critical Areas Regulations II.C.1.
Although all of the lots satisfy the zoning code's 15,000 square foot requirement, and all satisfy the building pad requirement, none of the four waterfront lots satisfies the code's minimum lot width requirement of 90 feet.
The ordinance adopting the interim critical areas regulations provides:
In the event of a conflict between any of the provisions of this Chapter and any other provision or provisions of the City Code or City Ordinance, the provisions of this Chapter shall be deemed to take precedence over and shall supersede any provision in conflict therewith.
MIDC § 19.10.040.
In approving the subdivision, the City determined[1] that the interim critical areas regulation requiring the identification of a building pad conflicted with, and therefore superseded, the zoning code's minimum lot dimension requirements.
The superior court reversed. The court found neither a conflict nor an ambiguity between the zoning code and the regulation.
We agree. There is no conflict here, and no ambiguity, and we decline Pacific Properties' invitation to venture beyond the plain words of the ordinances in question. The zoning code clearly sets forth three distinct requirements: minimum lot area, minimum lot dimensions, and a minimum building rectangle. MIDC § 19.04.0504. The building pad requirement in the critical areas regulation does not reference minimum lot size or dimensions, but only ensures that there is an acceptable area on the lot on which to build outside of the identified critical areas.[2] These requirements are not in conflict, and all the words of both ordinances can be given effect. See City of Seattle v. State Dep't. of Labor and Indus., 136 Wash.2d 693, 698, 965 P.2d 619 (1998) ("Statutes must be interpreted and construed so that all the language used is given effect, with no portion rendered meaningless or superfluous." (citations omitted)). There is thus nothing to interpret, and the plain language of both ordinances must be enforced.
A proposed development could satisfy the requirements of both the zoning code and the interim critical areas regulations. Pacific Properties' proposed development does not do so. Therefore, in approving the proposed subdivision when the minimum lot requirements violated the City's zoning ordinance, the City committed an error of law.
Pacific Properties concedes on appeal that the language of the two provisions can be read and applied concurrently and without conflict. But Pacific Properties nevertheless contends that while there is no "logical" conflict, there is a philosophical or policy conflict, as evidenced by the fact that in the six years following passage of the interim critical areas regulations, the City consistently interpreted the building pad requirement as having superseded the minimum lot dimension requirement. Appellant urges this court to heed the agency's expertise and defer to its "reasonable interpretation" of the law.
Pacific Properties points out that the interim critical areas regulations were adopted "in accordance with the provisions of the Washington State Growth Management Act,"[3] (GMA) and that two of the policy goals mandated by the GMA are to "encourage development in urban areas" and "reduce sprawl."[4] All of Mercer Island is located within a designated urban growth area, but, according to appellant, most of the remaining *326 lots are difficult to develop because of their irregular shapes or terrain. The philosophical or policy conflict appellant asks us to recognize is that allegedly the City cannot give effect to the zoning code's rigid dimension requirement and at the same time satisfy the GMA's general land use policy goals of encouraging urban development. Pacific Properties therefore characterizes the superior court's literal reading of the ordinances as a "sterile exercise in logic."
We reject Appellant's invitation to adopt novel rules of statutory construction. Were there ambiguity in the language of the enactments, or actual conflict with the GMA, we would surely investigate the underlying legislative intent. In the absence of ambiguity or conflict, however, a sterile exercise in logic is exactly what is called for: the words mean what they say.
Nor does the City's six-year history of erroneously interpreting its zoning code and interim critical areas regulations change our analysis. Misunderstanding or misinterpretation of a statute or ordinance by those charged with its enforcement does not alter its meaning or create a substitute enactment. Both the City and Pacific Properties are bound by the ordinances as written. See, e.g., Dykstra v. Skagit County, 97 Wash.App. 670, 677, 985 P.2d 424 (1999) (local government entity's prior erroneous enforcement of a land use regulation does not foreclose proper exercise of authority in subsequent cases), review denied, 140 Wash.2d 1016, 5 P.3d 8 (2000). In Clark County Natural Resources Council v. Clark County Citizens United, Inc., 94 Wash.App. 670, 677, 972 P.2d 941, review denied, 139 Wash.2d 1002, 989 P.2d 1136 (1999), this court explained:
Although a court will defer to an agency's interpretation when that will help the court achieve a proper understanding of the statute, "it is ultimately for the court to determine the purpose and meaning of statutes, even when the court's interpretation is contrary to that of the agency charged with carrying out the law." Here, in our view, the Board misread the statute and exceeded its authority. If we were to defer to its ruling, we would perpetuate, not correct, its error. Under these circumstances, we hold that deference is not due.
(Citations omitted).
Here, too, we decline to endorse the City's erroneous interpretation. Not only would such a deferential reading violate basic statutory interpretation principles, it would raise fairness concerns as well. Developers aware of the City's unwritten interpretation could move forward with a proposed development despite its plain noncompliance with the zoning code's dimension requirements, whereas those without benefit of such awareness would (correctly) read the two ordinances as precluding such development and never seek preliminary approval. We will not sanction this type of inequity. If the City truly believes a conflict exists between its growth management objectives and its ordinances, then it can amend its development code. Until then, in the absence of an actual conflict, the two provisions should be read together.
We affirm the superior court's conclusion that the City erroneously interpreted the law in adopting the Faben Point subdivision, and remand this matter to the City for further proceedings consistent with the decision of the superior court.
AGID, C.J., and APPELWICK, J., concur.
NOTES
[1] Neither the Planning Commission nor the City Council prepared written findings or conclusions at the time of approval as required by statute. See RCW 58.17.100, 110(2). The error was harmless in light of our disposition of the case.
[2] The Interim Critical Areas Regulations define "building pad" as "[a]n area[] of land which describes an acceptable location for a structure on a short plat, subdivision, or lot line revision." Interim Critical Areas Regulations Definitions.
[3] City of Mercer Island Ordinance No. A-96.
[4] RCW 36.70A.020(1)(2).