24 P.3d 1079 (2001)
106 Wash.App. 461
CITIZENS TO PRESERVE PIONEER PARK LLC, James Latting, Kevin Peck, and Judith A. Pluta, Respondents,
v.
CITY OF MERCER ISLAND, U.S. West Wireless LLC, Western Wireless, and Puget Sound Energy, Appellants.
No. 45671-7-I.
Court of Appeals of Washington, Division 1.
June 4, 2001.
Reconsideration Denied July 31, 2001.
*1081 Charles Edward Maduell, Michael P. Witek, Paul J. Lawrence, Preston, Gates & Ellis, Seattle, for Appellants.
Eric D. "Knoll" Lowney, Seattle, for Respondents.
*1080 BECKER, A.C.J.
This case involves a challenge to a city council's decision to grant a variance for the construction of a telecommunications pole. The council acted upon an appeal by residents of south Mercer Island from a decision by the city planning commission to deny the variance, and differed from the planning commission in its assessment of the visual impact of a 133-foot pole. The city code permits the council to use its own judgment about visual impact rather than deferring to an evaluation by the planning commission. Because the residents have not shown that the council's decision violated any of the standards of review set forth in the Land Use Petition Act, the council's decision must be affirmed.
US West and Western Wireless operate a digital wireless telecommunications system. Their service carries voice communications, two-way paging, and electronic mail capabilities via hand-held telephones. A telephone call runs through standard telephone lines to a facility radio antenna in the immediate vicinity of the user being called. The antenna then transmits the radio signal to the user. As a person using the service moves *1082 from place to place, the system transfers the radio signal between adjacent antennas whose signal areas overlap.
From the perspective of the carriers, each antenna ideally will be placed high enough to prevent topography and trees from disrupting the strength of a signal. To achieve their business goal of seamless coverage to customers on the south end of Mercer Island, U.S. West and Western Wireless sought to construct a pole 130 feet high, with a three-foot lightning rod at the top extending the total height to 133 feet. The pole would be "co-located," that is, both carriers would use the same pole but with separate antennas.
The proposed location is a Puget Sound Energy substation in a residential zone, adjacent to a mixed used planned business zone. The site borders a medium size shopping center, a fire station, a small park, and the Sunnybeam preschool. The trees surrounding the proposed location vary in height from 25 to approximately 137 feet. From some vantage points in these surroundings, a 133-foot pole would be visible above the tree line.
A Mercer Island ordinance generally prohibits the location of wireless communications facilities in residential zones. The electrical substation is exempted from this restriction, but the ordinance limits any telecommunications facility placed there to 60 feet in height. To construct a pole higher than 60 feet, the carriers had to meet the general variance criteria provided in the city code, and also show that their proposed 133-foot pole "constitutes the minimum necessary to permit acquisition or transmission of a usable signal". MICC 19.04.060(9)(a).[1]
The carriers applied for a variance. They submitted a draft environmental impact statement prepared by an independent consultant. The consultant used balloons to create photo-simulations of how the pole would appear to people at various locations in the surrounding neighborhood. Comments by the public expressed concern that in a residential area, a pole is an inappropriate object on the natural landscape. The final environmental impact statement concluded, however, that the proposed monopole was not likely to create a significant visual impact.
The Mercer Island Planning Commission held public hearings in August and September, 1998, to consider the variance application. Engineers for the carriers testified at the hearings that for the co-located pole to transmit and receive a usable signal, the minimum height was 115 feet, five feet above the average height of trees in the vicinity. The city planning department recommended finding that the variance criteria were met for an antenna at a height between 100 and 115 feet. Approximately 45 local residents, including representatives of the Sunnybeam preschool, spoke in opposition to the proposal. They expressed concerns that the pole would be unsightly, unhealthy, and inconsistent with neighborhood character.
The planning commission's decision on October 12, 1998 approved a 10-foot variance, thus allowing a total pole height of only 70 feet. The commission concluded that the carrier would need 110 feet to have a "usable signal." The commission nevertheless decided to limit the pole to 70 feet in order to satisfy the general variance criteria. The commission decided that the visual impact of a 130-foot pole upon the surrounding residents would alter the character of the neighborhood to an extent that would be materially detrimental to the public welfare. A 70-foot pole, on the other hand, would not be materially detrimental to the public welfare because the trees would screen it from view from most vantage points.
The carriers appealed the commission's decision to the Mercer Island City Council. Opponents of the pole, including the Sunnybeam preschool, also appealed. The carriers asserted that the commission had misapplied the variance criteria to the facts and that the commission's decision was unsupported by substantial evidence. The opponents contended that the carriers had failed to satisfy the variance criteria for a variance of any height.
*1083 On January 19, 1999, the city council held a public hearing at which the parties presented oral arguments based on the closed record created by the planning commission. The council noted that the area immediately adjacent to the pole location at the electrical substation is commercial, the pole's visibility as shown by the photos would be largely screened by trees, and the record lacked evidence that the pole would detract from property values or uses. The city council concluded the planning commission's decision was not supported by substantial evidence. As a result, the council reversed the commission's decision. The council substituted its own conclusion that the pole would not be injurious to property or materially detrimental to the public welfare and would not be inconsistent with the character of the neighborhood. The council agreed with the planning commission that the policies of the comprehensive plan required balancing the public benefits of wireless communications services against the need to protect neighborhood character and its environmentally sensitive areas. But where the planning commission struck the balance at 70 feet, the city council found that a pole height of 133 feet would both provide "adequate usable service to the Island" and have "a minimal visual impact to the environment". The city council stated: "Although the monopole may be visible from some adjacent properties, when considered in concert with the other commercial uses located on neighboring properties, the monopole does not impair the appropriate use or development of the adjacent property." The council granted the carriers the variance they had originally requested for the construction of a 133-foot pole. Adopting a suggestion by one of the carriers, the council conditioned its decision upon having the carriers mitigate the visual impact by placing their antennas inside the pole structure instead of using external horizontal extensions. The city council issued its final written decision approving the variance on March 6, 1999.
A group of residents then filed a petition challenging the city council's decision under the Land Use Petition Act. The superior court reversed the city council's decision and reinstated the decision of the planning commission. The carriers appeal.

JURISDICTION
The carriers first argue that the superior court lacked jurisdiction to hear the residents' land use petition because the residents failed to serve the petition upon the Sunnybeam preschool.
The procedural requirements of the Land Use Petition Act have to be strictly met before a trial court's appellate jurisdiction under the Act is properly invoked. Overhulse Neighborhood Assoc. v. Thurston County, 94 Wash.App. 593, 597, 972 P.2d 470 (1999) (petition properly dismissed where service was on county commissioner rather than auditor as required by statute). A trial court may not hear a land use petition if it was not timely served upon certain persons designated by statute as necessary parties to the judicial review. Those who must be served include:
Each person named in the written decision who filed an appeal to a local jurisdiction quasi-judicial decision maker regarding the land use decision at issue, unless the person has abandoned the appeal or the person's claims were dismissed before the quasi-judicial decision was rendered.
RCW 36.70C.040(2)(d).
It is undisputed that the city council was a "local jurisdiction quasi-judicial decision maker regarding the land use decision at issue" for purposes of this statute. Sunnybeam was named in the written decision of the planning commission and had "filed an appeal" to the city council from the planning commission's decision; the preschool was among the parties who had appealed the planning commission's decision on the basis that even a 10 foot variance was too much. The question is whether Sunnybeam had "abandoned the appeal". In response to a motion to dismiss brought by the carriers, the residents presented an affidavit from Sunnybeam's president, stating that the preschool had abandoned its appeal before the residents filed their LUPA action, and did not wish to be a party to the LUPA action. *1084 The trial court found that Sunnybeam had abandoned its appeal, and denied the motion to dismiss.
Sunnybeam did not abandon its participation in the case until after the city council's decision that rejected Sunnybeam's appeal. The carriers contend that the plain language of RCW 36.70C.040(2)(d) requires a party such as Sunnybeam to abandon its appeal "before the quasi-judicial decision was rendered." See RCW 36.70C.040(2)(d) ("unless the person has abandoned the appeal or the person's claims were dismissed before the quasi-judicial decision was rendered."). The proper construction of a statute raises an issue of law that we review de novo. Health Ins. Pool v. Health Care Authority, 129 Wash.2d 504, 507, 919 P.2d 62 (1996).
Under the last antecedent rule of statutory construction, "before the quasi-judicial decision was rendered" refers only to the immediately preceding clause, "or the person's claims were dismissed". See In Re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 781-82, 903 P.2d 443 (1995). The effect is to create two separate exceptions: unless (1) the person has abandoned the appeal or (2) the person's claims were dismissed before the quasi-judicial decision was rendered.
The carriers nevertheless maintain that "the appeal" that is abandoned can only be "an appeal to a local jurisdiction quasi-judicial decision maker". See RCW 36.70C.040(2)(d). Under the carriers' reading of the statute, a party must abandon such an appeal before it is decided. Otherwise, what the party has "abandoned" is not "the appeal" to the quasi-judicial decision maker, but rather the opportunity to participate if there are further proceedings. Sunnybeam, they argue, did not abandon its appeal to the city council. Rather, after the city council rejected its appeal, Sunnybeam decided not to take a further appeal to the superior court.
While the carriers' reading of the statute is not implausible, it is inconsistent with our decision in Hale v. Island County, 88 Wash. App. 764, 946 P.2d 1192 (1997). In that case, a boat building company applied to the county for a rezone. A labor union joined other opponents in appealing a threshold determination of nonsignificance under the State Environmental Policy Act. After a hearing examiner denied that appeal, the union did not appeal it further, and ceased to participate in further proceedings related to the rezone. The other opponents filed a land use petition challenging the hearing examiner's decision as well as the county commissioners' decision to grant preliminary use approval, but they did not serve the union. Under RCW 36.70C.040(2)(d), the union was a requisite party to the land use petition unless it had abandoned its appeal. Hale, 88 Wash.App. at 770, 946 P.2d 1192. Counsel for the union submitted a sworn declaration stating that the union did not wish to pursue the appeal of the hearing examiner's ruling and had abandoned it. Relying on that declaration, the superior court concluded that the opponents were not obliged to make theunion a party to the land use petition. Hale, 88 Wash.App. at 770, 946 P.2d 1192. This court affirmed that ruling.
The issue addressed in Hale was the hearsay nature of counsel's declaration rather than the statutory interpretation argument raised by the carriers here. Nevertheless, Hale suggests that abandonment of "the appeal" is most naturally understood in a broad sense to mean abandonment of further participation in the appellate process. We see no compelling reason to choose a narrower interpretation that would deprive the court of jurisdiction and require dismissal of a lawsuit for failure to serve a person who no longer wishes to participate in the matter. We conclude the superior court did not err in its determination that Sunnybeam had abandoned "the appeal", and consequently the court did not lack jurisdiction.

VARIANCE
The superior court reinstated the decision of the planning commission to grant only a 10-foot variance. The carriers contend the court should have affirmed the decision of the city council to approve the 133-foot pole.
When reviewing a superior court's decision on a land use petition, the appellate court stands in the shoes of the superior court. Biermann v. City of Spokane, 90 *1085 Wash.App. 816, 821, 960 P.2d 434 (1998), review denied, 137 Wash.2d 1004, 972 P.2d 466 (1999).
Under the comprehensive framework of the Land Use Petition Act, a court can review only a "land use decision"the "final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals". RCW 36.70C.020(1). Here, the land use decision that is the subject of the petition is the Mercer Island City Council's decision to grant the carriers a 73-foot height variance.
To obtain judicial relief from a local land use decision, the petitioner must establish one of the standards set forth in the Land Use Petition Act:
The court may grant relief only if the party seeking relief has carried the burden of establishing that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:
(a) The body or officer that made the land use decision engaged in unlawful procedures or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1).
The residents argue, under subsection (a), that the city council failed to follow the procedures prescribed for it by the Mercer Island City Code. Specifically, they contend that the council was obliged to accept the planning commission's conclusion that a 133-foot monopole would detrimentally alter the character of the neighborhood. The residents contend that the city council, as the body hearing an appeal from the decision of the planning commission, failed to give proper deference to the planning commission as required by its appellate role.
The notion that a local board or council acting in an appellate capacity "should have the same authorities and constraints as the appellate courts" has crept into some cases, along with the use of the terms "original jurisdiction" and "appellate jurisdiction" that ordinarily are used only in reference to courts. See East Fork Hills v. Clark County, 92 Wash.App. 838, 845, 965 P.2d 650 (1998); State ex rel. Lige & Wm. B. Dickson Co. v. Pierce County, 65 Wash.App. 614, 618, 829 P.2d 217 (1992). We are concerned that the analogy to the courts can be more confusing than helpful, as the present case illustrates. The scope and nature of an administrative appeal or review must be determined by the provisions of the statutes and ordinances which authorize them, not by applying an abstract definition of the word "appeal". Messer v. Snohomish Cy. Bd. of Adjustment, 19 Wash.App. 780, 787, 578 P.2d 50 (1978).
The Mercer Island City Code chapter on permit review procedures provides that there will be one open record hearing on a request for a variance, and that it will be conducted by the planning commission. After hearing presentations by staff and the applicant, and taking testimony from the public, the planning commission as the "decision body" is to approve or deny the application based on the code's variance criteria. An appeal of that decision can be taken to the city council. The appeal hearing is to be on the record developed before the planning commission, "with no or limited new evidence or information allowed to be submitted and only appeal argument allowed." MICC 19.04.140(VII). The code specifies the options available to the council, as the "hearing body", upon finishing its review:
3. If the hearing body finds that there has been substantial error, or the proceedings *1086 were materially affected by irregularities in procedure, or the decision was unsupported by material and substantial evidence in view of the entire record, or the decision is in conflict with the city's applicable decision criteria, it may:
(a) Reverse the decision.
(b) Modify the decision and approve it as modified.
(c) Remand the decision back to the decision maker for further consideration.
4. If the hearing body finds that none of the procedural or factual bases listed above exist and that there has been no substantial error, the hearing body may adopt the findings and/or conclusions of the decision body, concur with the decision of the decision body and approve the development proposal as originally approved, with or without modifications.
MICC 19.04.140(V)(J)(3) and (4).
The residents point out that the planning commission's finding of a significant visual impact created by a 133-foot pole was supported by extensive community testimony, the city design commission, and other evidence. They contend that because the planning commission's decision was supported by substantial evidence, the only option available to the city council was to concur with it.
It is true that when an appellate administrative body is governed by provisions directing it not to substitute its discretion for that of the original tribunal, findings of fact made by the original tribunal are not to be disturbed if they are sustained by substantial evidence. Messer, 19 Wash.App. at 787, 578 P.2d 50. But the critical determinations by the planning commission that the residents want to have reinstated cannot properly be characterized as findings of fact. The major areas in which the city council differed from the planning commission revolved around the meaning and application of the variance criteria. Such disputes, as contrasted to disagreement about "raw facts", present either questions of law, or mixed questions of fact and law. See Leschi Improvement Council v. Washington State Highway Commission, 84 Wash.2d 271, 283, 525 P.2d 774 (1974) (a finding of fact is the assertion that a phenomenon has happened or is or will be happening independent of or anterior to any assertion as to its legal effect). An example of a mixed question of fact and law is whether the visual impact of a monopole is so great as to constitute a material detriment to the public welfare. The city council could properly conclude, based on its own review of the pictures, maps and testimony in the record, as summarized by the planning commission's findings as to underlying facts, that in view of the entire record, there was insufficient evidence that the visibility of the pole constituted a detriment to public welfare. In so deciding, the city council did not step outside the appellate role prescribed for it by the Mercer Island City Code.
The residents also contend that the city council's land use decision was a clearly erroneous application of the law to the facts. RCW 36.70C.130(1)(d). The test is whether the reviewing court is left with the definite and firm conviction that a mistake has been committed. Schofield v. Spokane County, 96 Wash.App. 581, 586, 980 P.2d 277 (1999). A reviewing court must be deferential to factual determinations by the highest forum below that exercised fact-finding authority. Schofield, 96 Wash.App. at 586, 980 P.2d 277. The residents contend the planning commission was the highest forum exercising fact-finding authority and that the city council "usurped" the commission's fact-finding role when it entered its own findings.
The Mercer Island Code does not expressly preclude the council from finding facts. The provision allowing the council as a hearing body to "modify" the decision of the planning commission appears to imply authority to change the findings of fact. But even if deference is due to facts as found by the planning commission, the city council did not disregard or change the basic facts on which the planning commission reliedthe heights of the trees, the distances from the pole to various buildings, and the views illustrated by the balloon photosimulations. The issue on which the city council differed from the commission was whether the visual impact of the 133 foot pole would alter the character of the neighborhood or otherwise *1087 conflict with the variance criteria. The city council interpreted and applied the variance criteria as accommodating the visual impacts of a 133-foot pole. As one council member explained, the standard of "materially detrimental to the public welfare or injurious to the property", MICC 19.04.140(G)(4)(b), is a "pretty significant standard" not satisfied by the fact that "you can see this thing from different places round the area". We are not left with the conviction that the council was mistaken in its application of the general variance criteria to the underlying facts documented by the planning commission, and we therefore cannot conclude the council action was clearly erroneous.
The residents also argue the city council erroneously interpreted the city's special wireless variance criteria for what constitutes a usable signal. Under the Mercer Island ordinance, a height variance may be granted for an antenna if Mercer Island's general variance criteria are met, and the proposed antenna "constitutes the minimum necessary to permit acquisition or transmission of a usable signal". MICC 19.04.060(9)(a).
The ordinance does not define "usable signal." The planning commission concluded that a signal that would provide coverage to "a large portion of south Mercer Island" was usable. The city council interpreted "usable signal" as a functional signal that would not only provide substantial coverage but also permit a "hand-off" to other antennas. The council concluded that the minimum height for a usable signal was 115 feet. The need to create at least 15 feet of separation between the respective antennas of the two co-located carriers, and to add a three-foot lightning rod, accounted for the 133-foot total height allowed by the council.
The residents object that the city council has adopted a subjective standard dependent on the carriers' business objective of seamless coverage. But under the Land Use Petition Act, the council is entitled to "such deference as is due the construction of law by a local jurisdiction with expertise." RCW 36.70C.130(1)(b). Courts generally accord deference to an agency's interpretation of an ambiguous ordinance. See McTavish v. City of Bellevue, 89 Wash.App. 561, 949 P.2d 837 (1998). The term "usable signal" requires interpretation because whether the term allows broad coverage or something less is not apparent from the plain language of the ordinance. The city council's interpretation implies a judgment that wireless transmission facilities, if consistent with the general variance criteria, should be allowed to function well rather than poorly. While it is always ultimately for the court to determine the purpose and meaning of the law, including variance criteria, Hoberg v. Bellevue, 76 Wash.App. 357, 360, 884 P.2d 1339 (1994), the council's interpretation is not unreasonable, and the fact that the interpretation serves the economic interests of the carriers is not a compelling argument against it. We conclude the city council did not err in its interpretation of "usable signal."

NEW EVIDENCE
In its appeal brief submitted to the city council, U.S. West proposed that the council, as a mitigating condition, could require the carriers to place the antennas inside the pole instead of attaching them to the outside with brackets as originally proposed. During the hearing the council allowed a representative of the carriers to advocate for the alternative design. The council required the alternative design as a condition of its final decision.
The residents argue that the city council committed reversible error by allowing the carriers to introduce new evidence that was absent from the record before the planning commission. We disagree. The Mercer Island City Code authorizes the city council to consider a limited amount of new evidence in a closed record hearing. See MICC 19.04.140(VII) (A closed record appeal is an "administrative appeal on the record to the City Council following an open record hearing on a project application when the appeal is on the record with no or limited new evidence or information allowed to be submitted and only appeal argument allowed.") See also RCW 36.70B.020(1) (defining closed record appeal in the same manner as the Mercer Island City Code).
*1088 The residents do not base their argument on the Mercer Island City Code. They rely on cases holding it inappropriate for a board sitting as a review tribunal to consider new evidence that is not in the underlying record. Because the cases they rely on were decided under different statutes or ordinances, they do not control here. See East Fork Hills Rural Ass'n v. Clark County, 92 Wash.App. 838, 965 P.2d 650 (1998); North/South Airpark v. Haagen, 87 Wash.App. 765, 770-771, 942 P.2d 1068, review denied, 134 Wash.2d 1027, 958 P.2d 314 (1998) (decisions grounded in the Planning Enabling Act); and Ishmael v. King County, 68 Wash.App. 466, 471, 843 P.2d 554 (1993) (controlling ordinance directed examiner's consideration to be based "upon the record only."). In this case, the limited new evidence of an alternative design did not fundamentally change the proposal. We also note that the residents did not object to the city council's consideration of the alternative design, despite having an opportunity to do so. Under these circumstances the city council did not commit reversible error.
Finally, the residents contend the city council violated the appearance of fairness doctrine by considering the alternative design. Because the mitigation proposal was public and the residents had an opportunity to comment on it, we find no appearance of unfairness.
The decision of the trial court is reversed and the Mercer Island City Council's decision granting a full height variance is reinstated.
GROSSE and ELLINGTON, JJ., concur.
NOTES
[1] All references are to the Mercer Island City Code as it existed at the time of these proceedings.