IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| TOM BUTLER and LINDA LEWIS, husband and wife, | ) ) ) | No. 74435-6-I |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) | |
| SKAGIT COUNTY, a Washington county, and HAZEL FORD, | ) ) ) | UNPUBLISHED OPINION |
| Respondents. | ) ) ) | FILED: December 5, 2016 |

2016 DEC -5 AM 9:55
COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

BECKER, J. — This appeal concerns Skagit County's decision to grant a reasonable use exception and setback variances for a residence on Guemes Island. The record and local regulations support the County's decision.

FACTS

Respondent Hazel Ford owns two small lots in the Holiday Hideaway plat on Guemes Island. They are located across the street from one another, on either side of Decatur Place, near the intersection of Decatur Place and Holiday Boulevard. Appellants Tom Butler and Linda Lewis (the Butlers) live on Decatur Place near Ford's lots.

Around 2013, Ford began taking steps to develop her lots. She planned to build a house on lot 12, the western lot. Lot 12 consists of a rocky knoll above

a steep elevation. She planned to put a garage and septic system on lot 13. The house would be a two-story single family residence with a footprint of less than 800 square feet. The garage would be 24 by 24 feet.

The lots are located in a Rural Intermediate zone in which the minimum lot size for residential development is 2.5 acres. Former Skagit County Code (SCC) 14.16.850(4)(a)(iii) (2009).[1] The Skagit County Department of Planning and Development Services eventually certified lots 12 and 13 as one unit. Even when the lots are combined into one, the property comprises less than 2.5 acres. Ford requested, and the department granted, a reasonable use exception from the minimum lot size requirement. The department also granted Ford's request for variances from setback requirements so that she could build closer to Decatur Place and Holiday Boulevard than county regulations would normally allow.

The Butlers appealed these decisions. A hearing was held in June 2014. The examiner denied the appeal and made written findings of fact and conclusions of law in a decision issued on July 10, 2014. The Butlers successfully appealed to the Skagit County Board of Commissioners on the ground that the examiner did not make findings to support the variance as required by law. The county commissioners remanded to the hearing examiner. After another public hearing, the examiner issued a written decision on February 4, 2015, supplementing the previous decision with additional written findings. The commissioners affirmed this decision.

---

[1] Our references to the Skagit County Code are to the version in effect in 2013, the year Ford requested the reasonable use exception and the variances.

2

The Butlers appealed by filing a LUPA[2] petition in Snohomish County Superior Court. The court denied their claims:

> The court concludes as a matter of law that there is substantial evidence in the record to support the county's issuance of permits for (1) lot consolidation, (2) Reasonable use exception, and (3) variance for setbacks and the county's decision was not clearly erroneous and that petitioner's LUPA petition is denied.

The Butlers appeal. They contend the reasonable use exception and variances were improperly granted.

When reviewing an administrative decision, we stand in the same position as the superior court. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000). All evidence and any reasonable inferences therefrom must be viewed in the light most favorable to the party that prevailed in the highest forum that exercised fact-finding authority. Schofield v. Spokane County, 96 Wn. App. 581, 586, 980 P.2d 277 (1999). In this case, the highest forum that exercised fact-finding authority is the Skagit County Hearing Examiner.

A court may provide relief from a local land use decision if the party seeking relief demonstrates that one of six standards listed in RCW 36.70C.130(1) has been met. Wenatchee Sportsmen, 141 Wn.2d at 175. The Butlers seek relief under four of these standards:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

---

[2] Land Use Petition Act, chapter 36.70C RCW.

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

(d) The land use decision is a clearly erroneous application of the law to the facts;

RCW 36.70C.130(1)(a)-(d).

## REASONABLE USE EXCEPTION

In the decision issued on July 10, 2014, the hearing examiner determined it was clear from the record that the Ford property met the criteria of the Skagit County Code provision addressing reasonable use exceptions. The Butlers contend the examiner misinterpreted the code. We review issues of statutory interpretation de novo. McTavish v. City of Bellevue, 89 Wn. App. 561, 564, 949 P.2d 837 (1998).

The Skagit County Code is organized into titles. Title 14 is "Unified Development Code." Title 14 is divided into chapters. Chapter 14.10 is "Variances." Chapter 14.16 is "Zoning." One of the sections in chapter 14.16 is "General Provisions," former SCC 14.16.850. One of the subsections is former SCC 14.16.850(4), "Development of Lots of Record." Located here is a provision that an owner of substandard lots may seek a reasonable use exception to develop property that does not meet the minimum lot size requirements.

If an owner of contiguous, substandard lots chooses to aggregate the lots . . . and the resulting aggregated lot still does not meet the zoning minimum lot size, the lots must meet an exemption in Subsection (4)(c) of this Section, or apply for and receive a reasonable use exception . . . to be considered for development permits.

4

Former SCC 14.16.850(4)(a)(iii). Also located here are provisions stating what is required to establish a reasonable use exception. Former SCC 14.16.850(4)(f)(i-iii).

One requirement for a reasonable use exception is that the "proposed use can otherwise satisfy all other requirements of the Skagit County Code." Former SCC 14.16.850(4)(f)(i)(B). The Butlers contend Ford's building plan does not meet the part B requirement because it depends on obtaining variances from setback requirements.

The County responds that Ford satisfied the setback requirements of the code by qualifying for a variance from those requirements. The Butlers contend the County's interpretation is foreclosed by the first sentence of former SCC 14.16.850(4)(f): "Variances from the requirements of this Section shall not be considered." Former SCC 14.16.850(4)(f)(i). They say this language means a property owner who is granted a reasonable use exception may not also obtain a variance from setback requirements.

Viewed in the context of the general organization of the code, the phrase "the requirements of this Section" refers to section .850, the "General Provisions" of chapter 14.16 SCC on zoning. It does not refer to any section within chapter 14.10 SCC on variances. Therefore, it is not reasonable to interpret former SCC 14.16.850(4)(f)(i) as preventing a landowner who obtains a reasonable use exception from also meeting the setback requirements through the variance procedures in chapter 14.10 SCC.

The County's interpretation of its ordinances was not erroneous. The Butlers have not shown a basis for relief from the decision to grant a reasonable use exception.

SETBACK VARIANCES

The Butlers challenge the findings entered in support of the setback variances. A finding is clearly erroneous when, "although there is evidence to support it, the reviewing court on the record is left with the definite and firm conviction that a mistake has been committed." Anderson v. Pierce County, 86 Wn. App. 290, 302, 936 P.2d 432 (1997).

The code authorizes variances in "cases that will not be contrary to the public interest, and where, due to special conditions, literal enforcement of the provisions of this Code would result in unnecessary hardship." Former SCC 14.10.010 (2009).

An applicant for a variance must submit a narrative statement demonstrating the variance complies with various standards. Former SCC 14.10.030(2) (2007). The applicant must demonstrate that without the variance, she would be denied all reasonable use of her property. Former SCC 14.10.030(2)(f). A variance granted must be the "minimum variance that will make possible the reasonable use of land, building or structure." Former SCC 14.10.040(1)(b) (2000).

The Butlers contend that Ford could have developed her property by using lot 13 for the residence, making it unnecessary to reduce the setbacks for lot 12.

The hearing examiner found that "the weight of the evidence in this case . . . is that the topography of Lot 12 and Lot 13 directs any reasonable development of those properties to be as requested by Ford."

The record supports this conclusion. Ford's application explained the difficulties with the topography of the two lots. The hearing examiner heard testimony that only about 30 percent of lot 13 is useable for construction purposes, that it was necessary for Ford to construct the septic system on lot 13, that construction would have to accommodate the rocky knoll and steep slope on lot 12, and that Ford would be required to seek setback variances no matter where she constructed her residence. Based on this evidence, it was reasonable to conclude that Ford could make reasonable use of her property only if she was permitted a reduction in setbacks so that she could build the residence on lot 12, and that the variances granted were the minimum necessary to make reasonable use possible.

The Butlers suggest in passing that the variances impermissibly allow Ford's house to be sited on a steep slope in a landslide hazard area, in violation of the critical areas ordinance. In the decision of February 4, 2015, the hearing examiner found that "public health, safety and welfare will be maintained even with the granting of the setbacks" and the Butlers' claim that aggregation of the lots violated critical area requirements was "without factual basis." Because the Butlers do not challenge these findings, and their assignments of error and issue statements do not mention the critical areas ordinance, no issue derived from the critical areas ordinance is properly before us and we do not address that topic.

7

Another code requirement is that the "granting of the variance requested will not confer on the applicant any special privilege that is denied . . . to other lands, structures, or buildings in the same district." Former SCC 14.10.030(2)(d). One advantage for Ford of building the residence on lot 12 rather than lot 13 is that the site will capture a better view of Guemes Channel to the west. The Butlers argue that allowing Ford to use variances to take advantage of the view confers a special privilege.

The hearing examiner rejected this argument with a finding that many of the homes in the subdivision are built so as to capture views:

> The weight of the testimony in the current hearing is that a large percentage of the homes in the Holiday Hideaway Plat take advantage of the "view" height difference. That trait is common throughout the Plat. It would not confer a special privilege on Ford to grant the requested setbacks and development plans.

The examiner found that the Butlers "failed to produce proof under the clearly erroneous test (or any test) that Ford has received special privileges."

These findings are not clearly erroneous. There was testimony that about half the lots in Holiday Hideaway have views. In other words, having a view is common—it is not a special privilege denied to others. The examiner did not err in determining that the variance granted Ford no special privilege.

The approving authority must make certain findings, including whether the reasons in the application justify granting the variance. Former SCC 14.10.040(1)(a). The Butlers contend the decision to approve the variances must be reversed because the findings are too conclusory. See St. Clair v. Skagit County, 43 Wn. App. 122, 129, 715 P.2d 165 (1986). As shown by our

8

discussion above, the hearing examiner adequately addressed the variance criteria and the contested issues.

The Butlers do not meet their burden of demonstrating they are entitled to relief under LUPA. The trial court correctly affirmed the County's decision to grant setback variances to Ford.

## ATTORNEY FEES

The County and Ford request an award of reasonable attorney fees and costs. An appellate court "shall" award attorney fees to "the prevailing party or substantially prevailing party on appeal . . . of a decision by a county, city, or town to issue, condition, or deny a development permit involving a site-specific rezone, zoning, plat, conditional use, variance, shoreline permit, building permit, . . . or similar land use approval or decision." RCW 4.84.370(1).

The County and Ford have substantially prevailed throughout these proceedings. They requested fees in their brief as required by RAP 18.1(b). In their reply brief, the Butlers ask that the request be denied, but they offer no reason why it should be. Instead, they attempt to "reserve their right" to submit additional briefing and argument. Any such argument should have been made in the reply brief. RAP 10.3(c). The rules do not give appellants the right to reserve argument on whether fees should be awarded.

The respondents' request for fees is granted subject to compliance with RAP 18.1. A fee request is presented to and decided by a commissioner. RAP 18.1(f). If respondents present an affidavit of fees and expenses under RAP

18.1(d), appellants will have the right to contest the amount of the award. RAP 18.1(e).

     Affirmed.

Becker, J.

WE CONCUR: