[No. 61431-2-I.    Division One.    June 22, 2009.]

WHATCOM COUNTY FIRE DISTRICT NO. 21, *Respondent*, v. WHATCOM COUNTY, *Defendant*, BIRCH POINT VILLAGE, LLC, ET AL., *Appellants*.

602

*Philip J. Buri* (of *Buri Funston Mumford, PLLC*), for appellants.

*Jonathan K. Sitkin* (of *Chmelik Sitkin & Davis, PS*) and *Philip A. Talmadge* (of *Talmadge/Fitzpatrick*), for respondent.

¶1 Appelwick, J. — The Growth Management Act, chapter 36.70A RCW, vests counties with the primary authority to plan future development, including concurrency planning with providers of public services. Because the Whatcom County Comprehensive Plan establishes the standards for service and finds that the fire district has the capacity to meet that standard, the fire district is foreclosed from evaluating concurrency with new development on a project-by-project basis and requiring a concurrency mitigation fee. We reverse the Whatcom County Superior Court and reinstate the permit approvals.

## FACTS

¶2 This appeal concerns four proposed development projects located in Whatcom County's (County) Birch Bay area. Although the developers of the projects applied individually for permit approvals from the County, the superior court consolidated the appeals.

¶3 Birch Bay is an area 6 miles south of the Canadian border and 17 miles north of the city of Bellingham. The County has designated Birch Bay an urban growth area.

¶4 In 2001, the County began developing the Birch Bay Community Plan (BBCP) as part of the County's long term planning process. For this appeal, the relevant parts of the BBCP are its discussions of fire protection facilities and services. Fire District No. 13[1] (District) contributed expertise and in-kind services as a stakeholder in the BBCP planning process. The BBCP established that the District must meet the "gold standard" for successful emergency medical services, which "is four to six minute response times for aid services and 15 to 20 minutes for ambulance services." Further, the BBCP determined that

Fire District # 13 responds between five to six minutes. To shorten the response time the fire District has career and volunteer firefighters and emergency medical technicians manning the fire station in Birch Bay 24 hours a day.

[1] District no. 13 is now known as District no. 21.

Further, regarding future proposed expansions and improvements, the BBCP notes that

> [i]ncreased population, particularly in the Birch Point area[,] will necessitate the [sic] manning the fire station at Semiahmoo on a 24-hour basis. Additional equipment will also need to be brought to the station to maximize its effectiveness. These costs will be born [sic] by taxes paid by the growing population. The Birch Bay station now being utilized as a manned fire station must under go [sic] substantial remodeling in the future to house firefighters and [emergency medical technicians].

¶5 Four applicants submitted separate plans for residential and/or commercial developments in Whatcom County. The proposals include Horizon's Village at Semiahmoo, a mixed use development consisting of 200 residential units, and commercial and retail space. A second proposed project, from Schmidt Constructing, Inc., includes the Bay Breeze Cluster Plat, consisting of 16 single family lots, a 47,390 foot reserve area, and a storm water facility. The third proposed project, at Harborview Road, is a residential development of a total of 85 units. The fourth proposed project is the Birch Bay Center, a commercial development consisting of a total of 108,000 square feet of building area. The County approved site specific rezones, preliminary long subdivision permits, and binding site plans for these projects.

¶6 The Whatcom County Code (WCC) requires that applications for development contain written verifications of the availability of fire protection services. WCC 21.05-.120(3)(b). In August 2005, the District issued a letter confirming that it provided fire protection services to the Birch Bay area and that it would serve the listed property.[2] But, the District reserved the right to make additional comments or conditions on the proposed project.

---

[2] The record contains a "will serve" letter for a proposed project at Lincoln Road and Shintaffer Road but does not identify the project more precisely. Appellants identify it as the Horizon's Village project. Two other projects received similar letters.

¶7 The District passed Resolution 2005-017 and Resolution 2006-01. Both resolutions sought to advise the County on the need for mitigation under the State Environmental Policy Act (SEPA), chapter 43.21C RCW, because it was unable to provide services at "an urban level in a manner consistent with urban levels of service as established by the Whatcom County Birch Bay Community Plan and national fire standards." Because it anticipated growth in residential populations, which it would not be able to adequately serve, the District demanded that the County impose mitigation measures in the form of fees prior to approval of a SEPA Mitigated Determination of Non-Significance (MDNS), a Final Environmental Impact Statement, or project permits for residential development.

¶8 Birch Point Village, LLC, applied for a site specific rezone, planned unit development, and binding site plan for its Horizon's Village at Semiahmoo development. County staff recommended that the permits be granted but did not recommend mitigation fees.[3] The Whatcom County Hearing Examiner also recommended approval.

¶9 The County issued a MDNS for the project pursuant to SEPA on March 16, 2006. The District appealed on April 13, 2006. The District claimed that the SEPA determination did not adequately address the impacts of the project on the District's ability to provide medical response, fire response, and transport. The District argued that it was appropriate for the developer to pay a mitigation fee of $384 per vehicle average daily trip, to be paid directly to the District, or, in the alternative, a $2,500 fee per residential living unit and that the commercial parts of the development pay a proportionate fee.

¶10 On May 3, 2006, the county SEPA official issued a new MDNS with two conditions. First, it conditioned that

[3] A staff report found that the District had provided a concurrency letter dated September 15, 2005. The staff report noted that the concurrency letter contained the following conditions: (1) a fire flow requirement for water access, (2) district access shall meet the requirements of article 81 of the International Fire Code, and (3) the proposal shall comply with all applicable codes and ordinances adopted by the County.

the developer contribute to a planning study regarding the District's ability to provide services for new growth and the need for a concurrency assessment contribution, to be made by the applicant and paid to the District. Second, if the planning study was not completed prior to actual development, it required the applicant and the District to enter into a mediated agreement to determine the project's fees to the District to mitigate impacts of development, based on available estimates of the impacts of increased population created by the proposed development.

¶11 The Whatcom County Hearing Examiner reversed and revised the SEPA official's MDNS. He found that the District's argument, under WCC 20.80.212, that individual projects cannot be approved unless the District has issued a concurrency letter was erroneous. The hearing examiner stated, "In this case, since the Whatcom County Council has the authority to determine concurrency under the Growth Management Act and since the Whatcom County Council has determined within the Birch Bay Comprehensive Plan that Fire District No. 13 has adequate current capacity and that arrangements for adequate funding are in place to provide for future growth, Fire District No. 13 cannot stop this development by refusing to issue a concurrency letter." He also found that neither the County nor the District has the legal authority to exact fees from developers. He found that RCW 82.02.020 prohibits such fees. Regarding SEPA, the hearing examiner concluded that a threshold determination of nonsignificance may be issued as an MDNS pursuant to WAC 197-11-350. The hearing examiner found that the SEPA official's determination regarding mitigation was unsupported by the record. In reviewing the application, the Whatcom County Council adopted the hearing examiner's findings of fact and conclusions of law and recommendation.

¶12 Although this appeal encompasses four developments, each receiving independent approval from the County, the hearing examiner incorporated his decision in Birch Point into the other three.

¶13 The District petitioned to the Whatcom County Superior Court for review of the County's approval of the permits. By agreement of the parties, the cases were consolidated. In its final decision, order, and judgment on the Land Use Petition Act (LUPA), chapter 36.70C RCW, appeal, the superior court reversed the County, in favor of the District. The developers appeal.

## ANALYSIS

### I. Standard of Review

¶14 This appeal involves the Whatcom County Council's decision to approve an application for a site specific rezone for a planned development unit and an MDNS.

¶15 Judicial review of land use decisions is governed by LUPA. Ch. 36.70C RCW. This court is to stand in the shoes of the superior court and review the hearing examiner's action de novo on the basis of the administrative record. *Girton v. City of Seattle*, 97 Wn. App. 360, 363, 983 P.2d 1135 (1999). We review alleged errors of law de novo. *Id.* Under RCW 36.70C.130, an appellate court may grant relief from a land use decision if the petitioner carries its burden of establishing at least one of the following six standards:

"(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;

"(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

"(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

"(d) The land use decision is a clearly erroneous application of the law to the facts;

"(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

"(f) The land use decision violates the constitutional rights of the party seeking relief."

*Benchmark Land Co. v. City of Battle Ground*, 146 Wn.2d 685, 693-94, 49 P.3d 860 (2002) (quoting RCW 36.70C.130(1)).

¶16 Questions of statutory interpretation are reviewed de novo. *W. Telepage, Inc. v. City of Tacoma Dep't of Fin.*, 140 Wn.2d 599, 607, 998 P.2d 884 (2000). A court's objective in construing a statute is to determine the legislature's intent; if a statute's meaning is plain on its face, the court must give effect to that plain meaning as an expression of legislative intent. *State v. Chang*, 147 Wn. App. 490, 499-500, 195 P.3d 1008 (2008). Plain meaning is discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole. *State v. Elmore*, 143 Wn. App. 185, 188, 177 P.3d 172, *review denied*, 164 Wn.2d 1035, 197 P.3d 1185 (2008). These principles apply to interpretation of local ordinance. *Faben Point Neighbors v. City of Mercer Island*, 102 Wn. App. 775, 778, 11 P.3d 322 (2000).

## II.  Concurrency Planning under the Growth Management Act

¶17 Under the Growth Management Act (GMA), counties must adopt development regulations to implement the comprehensive plan. RCW 36.70A.040(3). Thus, the GMA indirectly regulates local land use decisions through comprehensive plans and development regulations, both of which must comply with the GMA. *See* former RCW 36.70A.130(1)(a), (b) (2002). Comprehensive plans serve as guides or blueprints to be used in making land use decisions. *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 873, 947 P.2d 1208 (1997). Counties that are required to develop comprehensive plans pursuant to RCW 36.70A.040 shall "[e]nsure that those public facilities and services necessary to support development" will be "adequate to serve the development at the time the devel-

opment is available for occupancy and use without decreasing current service levels below locally established minimum standards." RCW 36.70A.020(12).

¶18 The central issue in this appeal is whether the County erred when it adopted the hearing examiner's conclusion that "[u]ntil, and unless, the Comprehensive Plan for Birch Bay is amended to remove the statement that the fire district will be able to provide adequate services based on its current taxing abilities, Fire District No. 13 cannot assert a lack of ability to do so on a project by project basis." According to the District, WCC 20.80.212 mandates that concurrency planning occurs on a project-by-project basis, requiring the County to assess whether services are available, and adequate, for the growing population prior to individual permit approval. Thus, the determination of the adequacy of fire services occurs at project review stage, not during adoption of the county comprehensive plan.

¶19 An evaluation of RCW 36.70B.030 and WCC 20.80-.212 is dispositive. Subsection (1) of RCW 36.70B.030 explains that "[f]undamental land use planning choices made in adopted comprehensive plans and development regulations shall serve as the foundation for project review." Further, the statute requires that

> [d]uring project review, a local government or any subsequent reviewing body shall determine whether the items listed in this subsection are defined in the development regulations applicable to the proposed project or, in the absence of applicable regulations the adopted comprehensive plan. At a minimum, such applicable regulations or plans shall be determinative of the:
>
> . . . .
>
> (c) Availability and adequacy of public facilities identified in the comprehensive plan, if the plan or development regulations provide for funding of these facilities as required by chapter 36.70A RCW.

RCW 36.70B.030(2).

¶20 The District contends that WCC 20.80.212 is the applicable development regulation that defines the availability and adequacy of public facilities. WCC 20.80.212 states that the county shall not approve a subdivision, commercial development, or conditional use permit without a written finding that

> (1) All providers of water, sewage disposal, schools, and fire protection serving the development have issued a letter that adequate capacity exists or arrangements have been made to provide adequate services for the development.
>
> (2) No county facilities will be reduced below applicable levels of service as a result of the development.

¶21 But, WCC 20.80.212 is not an applicable development regulation because it is not determinative of the availability and adequacy of public facilities as defined in the comprehensive plan. The ordinance does not purport to establish the required criteria for the District. This was done in the comprehensive plan. Instead, it merely requires a letter attesting to the capacity of the services. Because the BBCP establishes the availability and adequacy of services, the District did not have discretion under WCC 20.80.212 regarding whether to issue the letter.

¶22 At best, the second section of WCC 20.80.212 prevents county facilities from falling below applicable levels of service as a result of the proposed development. This section does not itself define what the applicable levels of service are. It does, however, require the District to meet the applicable level of service in the face of the proposed development.

¶23 Here, the BBCP, as adopted into the comprehensive plan, establishes the standard of service, the gold standard. Moreover, the County has determined that the District can meet its service obligations at the gold standard, including new equipment and demands of the growing population, through existing taxation. The BBCP, not the District, determines the standard of service and adequacy of available fire service capacity. We affirm the County's issuance of the permits.

III. Sufficiency of the Evidence

¶24 The District argues that the hearing examiner's findings of fact pertaining to the capacity of the District to provide services to the new developments at the gold standard were not supported by substantial evidence. We review the hearing examiner's findings of fact for substantial evidence, that is, evidence sufficient to persuade a fair-minded person of the order's truth or correctness. *Benchmark*, 146 Wn.2d at 694.

¶25 The District directs this court mainly to the testimony of District Fire Chief Tom Fields and other materials he submitted. But the District's argument obscures the limited focus of the court's factual inquiry: to the extent that the BBCP has already concluded that adequate capacity exists, we do not evaluate whether capacity exists on a project-by-project basis. The BBCP determined that the District has the capacity to meet the needs of the growing population and/or that any new expansion or improvements will be borne by the growing population. The BBCP determinations are sufficient to support the hearing examiner's finding of fact that adequate capacity exists for the District to meet the standard level of services.

¶26 Likewise, the District argues that insufficient evidence supports the hearing examiner's finding of fact that the District had access to funding sources, other than the proposed concurrency fee. The hearing examiner found that county voters increased the sales tax to provide a separate funding mechanism for emergency medical services countywide. Further, he found, "This funding source is in addition to the other specific authorized funding mechanisms that the State has provided for fire districts."

¶27 Because the BBCP determined that the costs of improvements to serve new development would be borne by the growing population, the hearing examiner's finding is supported by substantial evidence. The District has an obligation to meet the adopted standard. Any challenge to the correctness of the comprehensive plan determination

that the District can meet the level of service must be done through amendment to the comprehensive plan, not by factual challenge to the project permitting. We reverse the superior court and reinstate the County's approval of the permits.

BECKER and LAU, JJ., concur.

Review granted at 168 Wn.2d 1005 (2010).