256 P.3d 295 (2011)
171 Wash.2d 421
WHATCOM COUNTY FIRE DISTRICT NO. 21, Petitioner,
v.
WHATCOM COUNTY, a municipal corporation, Defendant,
Birch Point Village, L.L.C., a Washington corporation; Schmidt Constructing, Inc., a Washington corporation; Bright Haven Builders, LLC, a Washington corporation; Mayflower Equities, Inc.; Lisa Schenk and Mike Sumner, Respondents.
No. 83611-6.
Supreme Court of Washington, En Banc.
Argued January 18, 2011.
Decided May 5, 2011.
*296 Philip Albert Talmadge, Talmadge/Fitzpatrick, Tukwila, WA, Jonathan Kolb Sitkin, Chmelik Sitkin & Davis PS, Bellingham, WA, for Petitioner.
Karen Frakes, Whatcom County Prosecutor's Office, Thomas Gregory Greenan, Zender Thurston, PS, Philip James Buri, Buri Funston Mumford, PLLC, Bellingham, WA, for Respondents.
Brian K. Snure, Snure Law Office, PSC, Des Moines, WA, amicus counsel for Washington Fire Commissioners Association.
OWENS, J.
¶ 1 In 2006, Whatcom County (the County) approved three land use applications for development in the Birch Bay urban growth area. Whatcom County Fire District No. 21[1] (the Fire District) filed a Land Use Petition Act (LUPA), ch. 36.70C RCW, petition challenging the approvals. At bottom, this case is a dispute between two independent municipal corporations over whether completion of the proposed developments would reduce fire protection services below an adequate level of service. Because we find that the County assigned responsibility for assessing the adequacy of fire protection services to the Fire District, we grant the Fire District's LUPA petition and reverse the County's approval of the land use applications at issue in this case.

FACTS
¶ 2 In 2006, the County approved the three development applications at issue in this case: Horizons Village at Semiahmoo, Harborview Road, and the Birch Bay Center. Because it believed it would not be able to provide an adequate level of service upon completion of the proposed developments, the Fire District refused to issue to the developers letters stating that adequate capacity to serve the developments existed or would exist. Despite the absence of such letters, the Whatcom County hearing examiner recommended approval of the three development applications, finding
on a more likely than not basis, that the Fire District will be able to continue to provide an adequate level of fire protection and emergency response services to the district, even with significant new growth, based on the currently authorized funding mechanisms available to the Fire District and the increased taxes and fees paid by the new growth.
¶ 3 Clerk's Papers (CP) at 343, 364, 413, 459-60. The hearing examiner also determined that
Whatcom County addressed fire protection concurrency when it adopted the Birch Bay Comprehensive Plan and concluded that the funding needs of Fire District No. 13 could adequately be met by taxes generated by the new growth.
*297 Id. at 345, 364, 413, 460. The Whatcom County Council adopted the hearing examiner's recommendations and approved all three development applications.
¶ 4 The Fire District then filed LUPA petitions challenging approval of all three developments in the superior court. These petitions were consolidated into a single proceeding. The Whatcom County Superior Court granted the Fire District's LUPA petition. The Court of Appeals reversed the superior court, finding that the County's comprehensive plan definitively established the adequacy and availability of fire protection, and reinstated the County's approval of the development applications. Whatcom County Fire Dist. No. 21 v. Whatcom County, 151 Wash.App. 601, 612, 614, 215 P.3d 956 (2009). We granted the Fire District's petition for review. Whatcom County Fire Dist. No. 21 v. Whatcom County, 168 Wash.2d 1005, 226 P.3d 782 (2010).

ISSUE
¶ 5 Did the County err by approving the development applications at issue absent a concurrency letter from the Fire District?

ANALYSIS

A. Standard of Review
¶ 6 Judicial review of land use decisions is governed by LUPA. Griffin v. Thurston County Bd. of Health, 165 Wash.2d 50, 54, 196 P.3d 141 (2008). Appellate courts sit in the same position as the superior court and apply the standards set forth in RCW 36.70C.130(1) to the administrative record that was before the body responsible for the land use decision. Id. at 54-55, 196 P.3d 141 (citing Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 751, 49 P.3d 867 (2002)). In order to set aside a land use decision, the party seeking relief must establish one of the following standards:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1). "Standards (a), (b), (e), and (f) present questions of law, which we review de novo." Abbey Rd. Grp., LLC v. City of Bonney Lake, 167 Wash.2d 242, 250, 218 P.3d 180 (2009). An application of law to the facts is "`"clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" Norway Hill Pres. & Prot. Ass'n v. King County Council, 87 Wash.2d 267, 274, 552 P.2d 674 (1976) (internal quotation marks omitted) (quoting Ancheta v. Daly, 77 Wash.2d 255, 259-60, 461 P.2d 531 (1969)).
¶ 7 Interpretation of statutes and ordinances is a question of law reviewed de novo. In re Pers. Restraint of Cruze, 169 Wash.2d 422, 426, 237 P.3d 274 (2010); Griffin, 165 Wash.2d at 55, 196 P.3d 141.

B. The County's Approval of the Applications Was a Clearly Erroneous Application of the Law to the Facts
¶ 8 Counties required or choosing to plan under the Growth Management Act (GMA), ch. 36.70A RCW, must adopt a comprehensive plan and development regulations that implement the comprehensive plan. RCW 36.70A.040(3)(d), (4)(d). A county's comprehensive plan serves as "a `guide' or `blueprint' to be used when making land use decisions." Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 873, 947 P.2d 1208 (1997) (quoting Barrie v. Kitsap County, 93 Wash.2d 843, 849, 613 P.2d *298 1148 (1980)). "`Development regulations'" are "controls placed on development or land use activities." RCW 36.70A.030(7); see City of Seattle v. Yes for Seattle, 122 Wash.App. 382, 391, 93 P.3d 176 (2004) (because the proposed ordinance "places controls on development and land use," it was held to be a development regulation). Such regulations necessarily constrain individual land use decisions. Woods v. Kittitas County, 162 Wash.2d 597, 613, 174 P.3d 25 (2007). "Fundamental land use planning choices made in adopted comprehensive plans and development regulations shall serve as the foundation for project review." RCW 36.70B.030(1).
¶ 9 Whatcom County Code (WCC) 20.80.212 provides:
No subdivision, commercial development or conditional uses shall be approved without a written finding that:
(1) All providers of water, sewage disposal, schools, and fire protection serving the development have issued a letter that adequate capacity exists or arrangements have been made to provide adequate services for the development.
(2) No county facilities will be reduced below applicable levels of service as a result of the development.
As it applies to the present case, the plain language of WCC 20.80.212 prohibits approval of certain land uses without a letter from the Fire District stating either that capacity to adequately serve the proposed development currently exists or that arrangements have been made to ensure that adequate capacity will exist. This is a control on land use and, consequently, a development regulation. See Yes for Seattle, 122 Wash.App. at 391, 93 P.3d 176.
¶ 10 WCC 20.80.212 is a particular type of development regulation known as a "concurrency" regulation. "Concurrency" is the concept that an adequate level of service should "be available concurrently with the impacts of the development or within a reasonable time thereafter." Thomas M. Walsh & Roger A. Pearce, The Concurrency Requirement of the Washington State Growth Management Act, 16 U. PUGET SOUND L. REV. 1025, 1026 (1993); see WAC 365-196-210(7), -840(1)(b). Concurrency is one of the enumerated goals of the GMA. RCW 36.70A.020(12). Except for transportation concurrency, whether to adopt concurrency requirements is generally left to the discretion of planning authority.[2] WAC 365-196-840(2); see RCW 36.70A.070(6)(b) (mandating adoption of transportation concurrency ordinances). By enacting WCC 20.80.212, the County has plainly decided to require concurrency for, among other public facilities and services, fire protection.
¶ 11 Not only does WCC 20.80.212 make a finding of concurrency a prerequisite to approval of various land uses, it also vests in the relevant providers the authority to determine whether concurrency exists. WCC 20.80.212 does not require a finding by the County that there is concurrency with respect to fire protection; instead it requires a letter from the provider of fire protection services (i.e., the Fire District) stating that concurrency exists. Such an assignment of responsibility is rational; the Fire District may reasonably be thought to be in the best position to determine what level of fire protection service is adequate and whether it is capable of providing that level of service. The decision to adopt concurrency regulations and assign concurrency determinations to the provider of the relevant public service is a fundamental land use planning choice that serves as the basis for project review under RCW 36.70B.030(1).
¶ 12 The County erred in applying WCC 20.80.212 to the land use applications at issue in the present case. It is undisputed that the Fire District declined to issue the required concurrency letters. Under a proper construction of WCC 20.80.212, this ends the inquiry; the applications cannot be approved without the required letters.[3] When the *299 County proceeded to independently determine that adequate capacity existed to serve the developments, it committed clear error. The County cannot, during project review, revisit its decision to assign to the Fire District the authority to determine concurrency. RCW 36.70B.030(1).
¶ 13 Moreover, contrary to the conclusion of the Court of Appeals, the County's comprehensive plan does not "establish[ ] the availability and adequacy of" fire protection services. Whatcom County Fire Dist. No. 21, 151 Wash.App. at 612, 215 P.3d 956. We may assume, without deciding, that the County's identification of the "gold standard" for "ambulance services" and "aid services" constitutes adoption of that standard. CP at 243. We may further assume that the chart entitled "Comparison of Level of Service Standards" establishes a five-minute response time as the applicable level of service for fire emergencies. BIRCH BAY COMMUNITY PLAN, Chapter 17Capital Facilities Plan, at 17-13, available at http://www.co.whatcom. wa.us/pds/planning/birchbay_subarea.jsp (last visited May 4, 2011). The comprehensive plan identifies three improvements that will be necessary to meet the anticipated population growth in the Birch Bay area: "manning the fire station at Semiahmoo on a 24-hour basis," "[a]dditional equipment" for the Semiahmoo station, and "substantial remodeling" of the Birch Bay station. CP at 243. The comprehensive plan further states that the costs of the changes to the Semiahmoo station "will be born[e] by taxes paid by a growing population," but the plan does not provide for funding of the necessary remodeling of the Birch Bay station. Id. Absent provision for necessary funding, the comprehensive plan cannot be considered determinative of the availability of fire protection services. See RCW 36.70B.030(2)(c) (regulations and plans are "determinative of the . . . [a]vailability and adequacy of public facilities identified in the comprehensive plan, if the plan or development regulations provide for funding of these facilities as required by chapter 36.70A RCW" (emphasis added)); RCW 36.70A.070(3) (comprehensive plan must include capital facilities plan specifying plan to finance capital facilities and clearly identifying sources of public money for such funding).

CONCLUSION
¶ 14 WCC 20.80.212 is a development regulation that prohibits approval of certain land use activities without a letter from the provider of fire protection services that adequate capacity does or will exist to maintain an appropriate level of service upon completion of the proposed development. The Fire District, upon determining that such capacity would not exist upon completion of the proposed developments, did not issue such a letter. The County committed clear error by finding that WCC 20.80.212 was satisfied. We therefore reverse the Court of Appeals, grant the Fire District's LUPA petition, and reverse the County's approval of the three land use applications at issue.
WE CONCUR: BARBARA A. MADSEN, Chief Justice, CHARLES W. JOHNSON, MARY E. FAIRHURST, DEBRA L. STEPHENS, and CHARLES K. WIGGINS, Justices.
CHAMBERS, J. (dissenting).
¶ 15 I would affirm the Court of Appeals and hold that the fire district in this case did not have discretion to refuse to issue a concurrency letter.

FACTS
¶ 16 In 2004, four developers sought approval for projects in Whatcom County's Birch Bay, an unincorporated area near Bellingham just south of the Canadian border. The Whatcom County Code (WCC) requires that, prior to project approval, `providers of fire protection services must issue a concurrency letter verifying that adequate capacity exists to serve new developments. WCC 20.80.212(1). The fire district serving the Birch Bay area refused to issue the letter but proposed that it would issue the letter if the developers paid the fire district concurrency mitigation fees of $2,500 per unit for residential developments and $384 per vehicle average *300 daily trip for commercial developments in order to ensure adequate services would be provided. The Whatcom County hearing examiner disagreed with the fire district, stating:
The Fire District cannot unreasonably refuse to issue a concurrency letter. In this case, since the Whatcom County Council has the authority to determine concurrency under the Growth Management Act and since the Whatcom County Council has determined within the Birch Bay Comprehensive Plan that Fire District No. 13[1] has adequate current capacity and that arrangements for adequate funding are in place to provide for future growth, Fire District No. 13 cannot stop this development by refusing to issue a concurrency letter.
Clerk's Papers at 348.
¶ 17 The county council adopted the hearing examiner's findings of fact and conclusions of law and approved the development projects. The fire district appealed to the Whatcom County Superior Court, which reversed the county's decision to approve the projects. The county appealed, and the Court of Appeals reversed the trial court's decision. Whatcom County Fire Dist. No. 21 v. Whatcom County, 151 Wash.App. 601, 215 P.3d 956 (2009). The fire district appealed to this court, and we accepted review. 168 Wash.2d 1005, 226 P.3d 782 (2010).

ANALYSIS

A. Standard of Review
¶ 18 Judicial review of land use decisions is governed by the Land Use Petition Act (LUPA). RCW 36.70C.030. An appellate court reviewing a LUPA petition is in the same position as the superior court. Griffin v. Thurston County, 165 Wash.2d 50, 54, 196 P.3d 141 (2008) (citing Isla Verde Int'l Holdings, Inc. v. City of Camas, 146 Wash.2d 740, 751, 49 P.3d 867 (2002)). It applies the LUPA standards directly to the administrative record that was before the deciding body without deference to the findings of any prior tribunal. Id. at 54-55, 196 P.3d 141. The party seeking relief must establish:
(a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
(d) The land use decision is a clearly erroneous application of the law to the facts;
(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
(f) The land use decision violates the constitutional rights of the party seeking relief.
RCW 36.70C.130(1).
¶ 19 Construction of a statute is a question of law we review de novo. State v. Wentz, 149 Wash.2d 342, 346, 68 P.3d 282 (2003). The court's duty in statutory interpretation is to discern and implement the legislature's intent. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). Where the plain language of a statute is unambiguous and legislative intent is apparent, we will not construe the statute otherwise. Id. However, plain meaning may be gleaned "from all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question." Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 11, 43 P.3d 4 (2002). The same principles apply to interpreting municipal or county ordinances. City of Spokane v. Fischer, 110 Wash.2d 541, 542, 754 P.2d 1241 (1988) (citing City of Puyallup v. Pac. Nw. Bell Tel. Co., 98 Wash.2d 443, 448, 656 P.2d 1035 (1982)).

*301 B. The Fire District Had No Discretion To Deny Issuance of the Letter

¶ 20 Counties regulated under the Growth Management Act must adopt a comprehensive plan and development regulations to implement the plan. RCW 36.70A.040(3)(d). Comprehensive plans serve as guides or blueprints to be used in making land use decisions. Citizens for Mount Vernon v. City of Mount Vernon, 133 Wash.2d 861, 873, 947 P.2d 1208 (1997). "`Development regulations'. . . means the controls placed on development or land use activities by a county or city." RCW 36.70A.030(7).
¶ 21 "Fundamental land use planning choices made in adopted comprehensive plans and development regulations shall serve as the foundation for project review." RCW 36.70B.030(1). During a project review, the reviewing body must first determine whether certain specified items "are defined in the development regulations applicable to the proposed project or, in the absence of applicable regulations the adopted comprehensive plan." RCW 36.70B.030(2). One of those specified items is the "[a]vailability and adequacy of public facilities identified in the comprehensive plan, if the plan or development regulations provide for funding of these facilities as required by chapter 36.70A RCW." RCW 36.70B.030(2)(c). In addition to requiring the reviewing body to determine whether the availability and adequacy of facilities is defined in the regulations or plan, the statute states that regulations or plans containing such definitions "shall be determinative" of that availability and adequacy. RCW 36.70B.030(2).
¶ 22 WCC 20.80.212 states:
No subdivision, commercial development or conditional uses shall be approved without a written finding that:
(1) All providers of water, sewage disposal, schools, and fire protection serving the development have issued a letter that adequate capacity exists or arrangements have been made to provide adequate services for the development.
(2) No county facilities will be reduced below applicable levels of service as a result of the development.
The fire district contends that this is an "applicable" development regulation that defines the availability and adequacy of public facilities under RCW 36.70B.030. Br. of Resp't at 37-38. In essence, the district is arguing that the requirements of WCC 20.80.212, including issuance of the letter, should be determinative of the availability and adequacy of the fire services at issue here. See majority at 298-99. In other words the fire district, not the county, ultimately determines the availability and adequacy of its own services.
¶ 23 This interpretation cannot be correct, because the ordinance does not establish any of the criteria that would be necessary to define or determine the availability and adequacy of firefighting facilities. Those criteria are established instead in the comprehensive plan. The Birch Bay Community Plan identifies the standards for emergency services. BIRCH BAY COMMUNITY PLAN, Chapter 17 Capital Facilities Plan, at 17-13, available at http://www.co.whatcom.wa.us/pds/ planning/birchbay_subarea.jsp (last visited May 4, 2011) (BBCP). The plan also identifies improvements necessary to meet those standards and states that funding for those improvements will come from "taxes paid by the growing population." Chapter 15Public Health and Safety, supra, at 15-6. The BBCP, in other words, actually defines the adequacy and availability of fire protection services and provides for funding of those services as required under RCW 36.70B.030. WCC 20.80.212 does neither.

CONCLUSION
¶ 24 In the absence of a defining regulation, the comprehensive plan is determinative of the adequacy and availability of services. RCW 36.70B.030(2). Because adequacy of services had already been determined by the plan adopted by Whatcom County, the fire district lacked discretion to deny issuance of the letter based on its own determination of inadequacy.
¶ 25 I respectfully dissent.
WE CONCUR: GERRY L. ALEXANDER and JAMES M. JOHNSON, Justices.
NOTES
[1] Whatcom County Fire District No. 21 was created in 2006 as a result of the merger of Whatcom County Fire Districts 3 and 13. As District 21 is the successor to District 13, this opinion uses the term "the Fire District" to refer to both.
[2] As it is unnecessary to our disposition of the case, we do not address and we express no opinion on the Fire District's argument that RCW 58.17.110 requires a finding of concurrency with respect to fire protection.
[3] The Fire District's refusal to issue the letters cannot, of course, be arbitrary or capricious. Wash. Waste Sys., Inc. v. Clark County, 115 Wash.2d 74, 80, 794 P.2d 508 (1990). However, there is no allegation in the present case that the Fire District's actions were arbitrary or capricious.
[1] As the majority explains, Fire District No. 13 was later subsumed into Fire District No. 21. Majority at 296 n. 1. Like the majority, we simply use "the fire district" to refer to the relevant fire service provider.