# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| MARK AND PATRICIA MAYKO, | No. 48308-4-II |
| Respondents, | |
| vs. | UNPUBLISHED OPINION |
| PACIFIC COUNTY, | |
| Appellant. | |

MAXA, A.C.J. – Pacific County appeals the superior court's decision on a Land Use Petition Act (LUPA) appeal filed by Mark and Patricia Mayko. The Maykos sought review in the superior court of the Board of Pacific County Commissioners' land use decision denying their requested variance, under the Pacific County Critical Areas and Resource Lands (CARL) ordinance, to build a house completely within a wetland buffer area. The superior court held that the Commissioners' land use decision was erroneous and that the Maykos were entitled to a variance.

We hold that (1) the Commissioners' land use decision was not erroneous because they correctly concluded that the Maykos did not satisfy at least two of the six required criteria to obtain a variance under the CARL ordinance, (2) the Commissioners did not use unlawful procedure or fail to follow prescribed process when denying the Maykos' variance request, and (3) the variance denial did not violate the Maykos' Fifth Amendment rights. Accordingly, we

reverse the superior court and affirm the Commissioners' denial of the Maykos' request for a variance.

FACTS

The Maykos own a parcel of property adjacent to Willapa Bay on the Long Beach peninsula on which they planned to build a 2,400 square foot single family house with an onsite septic system. The Maykos' lot is part of a short platted parcel in the Espy plat. Their property is 900 feet long and approximately 131 feet wide. There is an existing driveway providing access to the property.

*Existence of Wetlands and Variance Request*

There are wetlands on and adjacent to the Maykos' lot. The CARL ordinance restricts development on and near wetlands. Because the Maykos' proposed home would be within 100 feet of a wetland, the CARL ordinance required them to conduct a wetland delineation and submit a report to the Department of Community Development. They hired hydrogeologist Robert Bogar to conduct this wetland delineation and prepare a report. Bogar's report concluded that there were category III wetlands on the Maykos' property that required a 50 foot buffer zone, leaving only 25 feet of developable property.

Matt Reider, a planner at the Department of Community Development, reviewed Bogar's wetland delineation report and sent the Maykos a letter in response. He noted that because of the required wetland buffer the Maykos "only have 25 feet from the western property line to develop." Clerk's Papers (CP) at 247. He further stated "[a]t this time Pacific County prohibits development that occurs outside this 25 foot area extending from the western property line. No development shall occur within the 50 foot buffer or any wetland area. A Critical Areas and

2

Resource Lands Variance Application is available at the Department of Community Development offices." CP at 247. After receiving Reider's letter, the Maykos filed a variance application.[1]

The Maykos' variance request described their proposed building plan and how they intended to mitigate the impact of their building project. The building site would sit entirely within a wetland buffer. They proposed building the house on the upland side of their property in order to prevent direct impact on the wetland. The Maykos acknowledged that onsite mitigation would not be possible because there was not enough land outside of the buffer on their lot. But they offered to purchase offsite in-kind mitigation credits from the Long Beach Mitigation Bank in order to compensate for their encroachment on the buffer.

*Hearing Examiner Ruling*

On July 3, 2014, a hearing examiner conducted a public hearing on the Maykos' requested variance. Reider provided a staff report and testimony regarding the requested variance. Mark Mayko testified in support of the variance. Bogar also testified and presented scientific opinions. Two members of the public, Dick Sheldon and Ann LeFors, testified in opposition to the variance.

The hearing examiner denied the Maykos' requested CARL variance, finding that the Maykos failed to meet five of the six criteria needed for a variance.

---

[1] At some point before the Commissioners' hearing, the Department of Ecology amended the wetland delineation on the Maykos' property from a category III wetland to a category II wetland. This change in classification increased the required wetland buffer setback from 50 feet to 75 feet. The practical effect was that the Maykos' lot was now entirely covered by wetlands and wetland buffers.

No. 48308-4-II

*Appeal to County Commissioners*

The Maykos sought de novo review by the Commissioners of the hearing examiner's decision. At a review hearing, the Commissioners heard testimony from Reider, the Maykos, Bogar, Tim Haderly, Sheldon, and LeFors. They also incorporated into their review all the testimony provided before the hearing examiner at the July hearing.

Reider testified that the Maykos' proposed home would not negatively impact any wetlands, but would encroach on wetland buffers. He said that the Maykos' proposal to buy mitigation bank credits was "a guarantee of preservation of another wetland site" and that the county in the past had approved the purchase of mitigation bank credits as an acceptable form of mitigation. CP at 25. Reider's staff report outlined each of the six criteria for a CARL ordinance variance, but did not make any recommendation regarding the variance.

Bogar testified as a hydrogeologist and wetland expert. He testified that the wetland on and near the Maykos' lot was a "closed depressional wetland." CP at 33. There was a berm dividing the wetland from the Maykos' upland property and any runoff from the Maykos' lot would filter through soil and sand before reaching the wetland. Bogar thought that the berm would be "more than adequate to act as a treatment system for anything that happens and anything that might occur to impact wetlands immediately adjacent to the property." CP at 33.

Bogar also provided a map of the Espy plat and noted that all the Espy parcels were similar in shape except three that had been short-platted. And he noted that the Maykos' property was distinct from the other short plats within that parcel because it had a driveway providing access. Bogar said that because the driveway was already there, the Maykos would not have to directly impact wetlands in order to build one.

4

Bogar presented evidence of a variance that had been granted to build a house on another property bordering Willapa Bay wetland. That property was nine miles from the Maykos' property. But Bogar testified that it was similar in that it was next to a Willapa Bay wetland, impacted only buffers and not the wetland itself, and wetland credits were purchased from a mitigation bank.

Regarding mitigation, Bogar noted that there was no way to avoid or minimize building on wetland buffers because the entire property was designated as a buffer. But he suggested that the Maykos could buy additional offsite mitigation bank credits or implement a drainage plan to further mitigate runoff effects onsite.

Haderly testified on behalf of the Long Beach Mitigation Bank. He testified that the Maykos were eligible to purchase wetland credits for their property.

Sheldon testified on behalf of the Willapa Bay Oyster Growers Association and provided a number of objections to the Maykos' variance request. He stated that he had been active in monitoring property development in the area for many years and had previously challenged other development proposals. Sheldon said he was not aware of any variances that had been granted to properties in the area, but that he knew of some that had been denied (although he admitted they were slightly different situations). Sheldon stated that he was concerned that granting the Maykos a variance would set a precedent.

LeFors also testified as an interested member of the public. She went through each of the variance criteria and stated that in her opinion the Maykos could only arguably meet four of the six criteria. Regarding the first criterion, she said that the Maykos' property did not have any special circumstances peculiar to the property, because all 18 bayside properties in the Espy plat

were platted at the same time and shared similar topography. She said that there were properties all over the county that similarly sat entirely within wetland buffers like the Maykos' property. And LeFors noted that the Maykos' property was a legal non-conforming lot just like all the other lots in their plat.

LeFors stated that regarding the second criterion, the literal interpretation of the CARL ordinance would not deny the Maykos rights commonly enjoyed by other property owners in compliance with the ordinance because all properties near wetlands are denied development rights. LeFors also stated that she was concerned that the Maykos' plan to buy mitigation bank credits was not sufficient because the Maykos had not shown that they considered better mitigation options that would actually reduce their impact, rather than just compensate for it.

The Commissioners entered findings of fact and conclusions of law and denied the Maykos' variance request. The Commissioners concluded that the Maykos could not satisfy five of the six variance criteria.

*Appeal to Superior Court*

The Maykos filed an appeal in the superior court under LUPA seeking review of the Commissioners' land use decision. The superior court examined the record from the hearing before the Commissioners and the hearing examiner's hearing.

On October 30, 2015, the superior court ruled that the Commissioners' denial of the variance was erroneous because the Maykos had provided substantial evidence to meet each of the six required criteria to obtain a CARL ordinance variance. Accordingly, the superior court reversed the Commissioners' decision and ordered that the Maykos be granted a variance.

The County appeals the superior court's ruling.

ANALYSIS

A.    LUPA STANDARDS FOR RELIEF

LUPA governs judicial review of land use decisions. *Whatcom County Fire Dist. No. 21 v. Whatcom County*, 171 Wn.2d 421, 426, 256 P.3d 295 (2011). We sit in the same position as the superior court and review the administrative body's land use decision based on the record before that body. *Id.* On appeal, the party who filed the LUPA petition has the burden of establishing that the land use decision was erroneous even if that party prevailed in the superior court. *Quality Rock Products, Inc. v. Thurston County*, 139 Wn. App. 125, 134, 159 P.3d 1 (2007). As a result, the Maykos have that burden here.

RCW 36.70C.130 provides the standards for granting relief under LUPA. We can grant relief only if the party challenging the administrative decision satisfies the burden of establishing that one of six statutory standards has been met:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
>
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or
>
> (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).

We use a different standard of review depending on which of the six standards apply. *Whatcom County*, 171 Wn.2d at 426-27. Standards (a), (b), (e), and (f) present questions of law and therefore are reviewed de novo. *Id.* at 426. For standard (c), we view the facts and inferences in the light most favorable to the party that prevailed in the highest fact-finding forum and ask whether there is a sufficient quantum of evidence in the record to persuade a reasonable person of the truth of the declared premise. *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828-29, 256 P.3d 1150 (2011). For standard (d), an application of law to facts is "clearly erroneous" if after reviewing all evidence we are left with the definite and firm conviction that a mistake has been committed. *Whatcom County*, 171 Wn.2d at 427. We can conclude that the decision was clearly erroneous even if it was supported by evidence. *Id.*

When reviewing an ordinance, we give considerable deference to the construction of the ordinance used by those officials charged with its enforcement. *Phoenix*, 171 Wn.2d at 830.

B.      PACIFIC COUNTY CARL ORDINANCE

The purpose of the CARL ordinance is "to define, identify, and protect critical areas and resource lands as required by the Growth Management Act of 1990." Pacific County Ordinance (PCO) 147, § 1(B) (April 13, 1999). The parties agree that the CARL ordinance generally prohibits construction of a house in a wetland buffer area without a variance. If a person seeks a variance to reduce or alter a wetland buffer, "then the person shall demonstrate why such buffer . . . together with such alternative mitigation proposed . . . is sufficient to adequately protect the critical area function." PCO 147, § 1(D)(3)(b).

8

Section 3(J) of the CARL ordinance allows a property owner to request a variance. The person seeking the variance has the burden of proof to "bring forth evidence in support of the variance." PCO 147, § 3(J)(1). Section 3(J)(2) provides:

> The Administrator shall grant a variance if the person requesting the variance demonstrates that the requested variance conforms to all of the criteria set forth below:
>
> a. That special conditions and circumstances exist which are peculiar to the land;
>
> b. That literal interpretation of the provisions of this Ordinance would deprive the person seeking the variance of rights commonly enjoyed by other properties conforming to the terms of this Ordinance;
>
> c. That the special conditions and circumstances do not result from the actions of the person seeking the variance;
>
> d. That the granting of the variance requested will not confer on the person seeking the variance any special privilege that is denied by this Ordinance to other lands, structures, or buildings under similar circumstances;
>
> e. That the variance requested is the minimum necessary to afford relief; and
>
> f. That to afford relief the requested variance will not create significant impacts to critical areas and resource lands and will not be materially detrimental to the public welfare or contrary to the public interest.

PCO 147, § 3(J)(2).

C.    APPLICATION OF VARIANCE CRITERIA

The Maykos argue that they are entitled to relief under LUPA because the Commissioners' denial of the variance based on their application of the variance criteria was an erroneous interpretation of law under RCW 36.70C.130(1)(b), was not supported by substantial evidence under RCW 36.70C.130(1)(c), and was a misapplication of the law to the facts under RCW 36.70C.130(1)(d).

9

For the Commissioners' denial of the variance to be erroneous, their conclusion that the Maykos did not satisfy five of the six variance criteria must be erroneous under RCW 36.70C.130(1)(b), (c) and/or (d) for *all five* of the challenged criteria. In other words, if the Commissioners' conclusion was correct on at least one of the criteria, their denial of the variance was not erroneous. We hold that the Commissioners' conclusions were not erroneous on at least criterion (b) and criterion (e), and therefore that their land use decision was not erroneous. As a result, we do not address the other criteria.

1. Criterion (b): Rights Commonly Enjoyed by Other Properties

The second criterion is that the "literal interpretation of the provisions of this Ordinance would deprive the person seeking the variance of rights commonly enjoyed by other properties conforming to the terms of this Ordinance." PCO 147, § 3(J)(2)(b). The Commissioners concluded that the Maykos provided no evidence to satisfy this criterion. Specifically, the Commissioners stated that the Maykos "testified that they will not be able to develop the property as they wished and as they expected to, but failed to provide evidence of any rights they are deprived of that is [sic] enjoyed by others who conform to the CARL Ordinance." CP at 10 (Conclusions of Law (CL) 6(b)). The Maykos argue that the Commissioners' conclusion was not supported by substantial evidence and was an erroneous application of the law to the facts. We disagree.

a. Substantial Evidence

The Maykos argue that there was not substantial evidence supporting the Commissioners' conclusion on criterion (b) because they did provide evidence that there were houses on other properties in the area. They rely on Reider's report which states, "Surrounding properties have

10

single family residences on them even though surrounding properties have wetland communities on site. The constraint with Mr. Mayko's site is that the entire upland portion is covered by wetland buffer." CP at 188. But Reider did not provide evidence to support his statement that surrounding properties have single family residences. Bogar testified that he knew of a home built nine miles away that was next to Willapa Bay wetlands and only impacted buffers.

The County relied on a tax lot map that showed that only one of the 10 properties surrounding the Maykos' was developed. The Maykos claimed that the map shows two developed properties and that the map shows a sliver of four other developed properties. LeFors testified that other bay properties are landlocked with no road access, making development difficult.

Viewing the evidence in the light most favorable to the County, there is no evidence that the Maykos would be deprived of rights *commonly* enjoyed by others who comply with the CARL ordinance. Because almost all of the lots around the Maykos' property were undeveloped, evidence of one lot with a house nearby and another lot with a house nine miles away is insufficient to satisfy criterion (b). Therefore, we hold that there was substantial evidence supporting the Commissioners' finding that the Maykos would not be deprived of rights commonly enjoyed by others who comply with the CARL ordinance.

b.    Application of the Law to the Facts

The Maykos argue that the Commissioners' decision on this requirement was an erroneous application of the law to the facts. They point out that the other properties in the Espy plat are larger than their short-platted lot, which would allow those properties to be developed despite the presence of wetlands. They claim that they demonstrated that others can build homes

11

and they cannot even though their home would not have a negative impact on the actual wetlands.

The Maykos' argument does not illustrate how the Commissioners' application of the law to the facts was clearly erroneous. The Commissioners analyzed whether surrounding properties had developed single family houses in compliance with the CARL ordinance. The tax lot map indicated that there was only one developed property in the immediate area. The Commissioners concluded that denying the Maykos' variance request and preventing them from building their planned home would not be depriving the Maykos of a right commonly enjoyed by others, because most others had not built houses on their properties. Therefore, we hold that the Commissioners' application of the law to the facts was not clearly erroneous.

2. Criterion (e): Minimum Variance Necessary to Afford Relief

The fifth criterion is that "the variance requested is the minimum necessary to afford relief." PCO 147, § 3(J)(2)(e). The Commissioners concluded that the Maykos "provided no evidence that the requested variance is the minimum necessary to afford relief. Other configurations requiring less encroachment, a smaller footprint, or other means of mitigation were not considered." CP at 10 (CL 6(e)). The Maykos argue that the Commissioners' conclusion was not supported by substantial evidence and was an erroneous interpretation of the law. We disagree.

a. Substantial Evidence

The Maykos argue that there was not substantial evidence supporting the Commissioners' conclusion on criterion (e) because they did produce evidence that there were no other economically viable options for the property besides their planned house. Their property is 900

feet long and approximately 131 feet wide. The building site would be 75 feet long and 131 feet wide and sit on the upland portion of the property. Because the entire property consists of wetlands or wetland buffer, there was no alternative other than building entirely within the buffer. Reider's report stated, "Given the physical characteristics of the property it appears that the variance is the minimum necessary to afford relief." CP at 189.

The County emphasizes that the Maykos did not show whether or not other options were available or even considered. For instance, the Maykos did not present evidence that other building plans were considered and rejected. The County also points out that Reider's report stated that the Maykos could park a recreational vehicle on their property, which it argues shows that a variance is not required for relief.

As interpreted by the Commissioners, "minimum necessary to afford relief" focuses on the nature of the configuration, encroachment and footprint of the proposed house, and the extent of any proposed mitigation. But the Maykos did not present any meaningful evidence that their specific home plans and variance request was the "minimum necessary." Their proposed house was 2,400 square feet with onsite septic. They did not show that this was the only possible size or configuration of the house or that another design could not lessen the extent of the encroachment onto the buffer.

Under the CARL ordinance, the Maykos had the burden of proof to bring forth evidence in support of the variance. PCO 147, § 3(J)(1). Viewing the evidence in the light most favorable to the County, we hold that substantial evidence supported the Commissioners' conclusion that the Maykos' requested variance (buying mitigation bank credits to compensate for building a 2,400 square foot home on a wetland buffer) was not the minimum necessary to afford relief.

b.   Interpretation of the Law

The Maykos argue that the Commissioners' finding on this criterion was an erroneous interpretation of the law because the Maykos presented evidence that their building plans were the minimum necessary to provide relief.  But their argument does not address how the Commissioners' interpreted the law or how the law should have been interpreted.  Their argument is incorrectly characterized as being about interpretation of law, when it is actually about sufficiency of the evidence as discussed above.

In any event, the Commissioners interpreted this criterion as focusing on the nature of the proposed improvement (configuration, encroachment and footprint of the house) and the extent of any proposed mitigation.  Giving deference to the Commissioners as required under RCW 36.70C.130(1)(b), we hold that the Commissioners' conclusion on criterion (e) was not based on an erroneous interpretation of the law.

3.   Summary

The Maykos did not meet their burden under LUPA to show that the Commissioners' land use decision was erroneous because they did not show that the Commissioners' conclusions on all five of the challenged criteria were erroneous.  The Commissioners' conclusions were not erroneous on criterion (b) and criterion (e).  Accordingly, we hold that the Commissioners' denial of the Maykos' variance request was not an erroneous interpretation of the law, was based on substantial evidence, and was not a clearly erroneous application of the law to the facts.

D.      UNLAWFUL PROCEDURE OR FAILURE TO FOLLOW PRESCRIBED PROCESS

The Maykos argue that they are entitled to relief under RCW 36.70C.130(1)(a) because the Commissioners engaged in unlawful procedure and failed to follow prescribed process.[2] We disagree.

A LUPA petitioner is entitled to relief under RCW 36.70C.130(1)(a) if "[t]he body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless." As noted above, we review de novo whether the Commissioners engaged in unlawful procedure or failed to follow prescribed process. *Whatcom County*, 171 Wn.2d at 426.

The Maykos argue that the Commissioners were overly influenced by lay testimony from Sheldon and inquired whether the Maykos planned on selling the property after receiving a variance. They claim that the Commissioners gave weight to "unsupported slurs" from Sheldon, who alleged that the Maykos' property was always junk property that was never buildable. They also assert that the Commissioners improperly asked them about Sheldon's allegation that the Maykos wanted the variance so that they could sell the property for a higher price.[3] The Maykos argue that whether they planned to build or sell was irrelevant because it did not relate to any of

---

[2] The Maykos also argue that the hearing examiner engaged in unlawful procedure and failed to follow prescribed process for similar reasons, but the conduct of the hearings examiner is irrelevant in this appeal. LUPA review applies to the Commissioners' decision, which was made de novo and not influenced by the hearing examiner.

[3] One commissioner asked the Maykos whether they planned on just selling the land after getting the variance and whether the variance would remain with the title or if it was specific to the Maykos. Patricia Mayko responded that most of what Sheldon said was unsupported opinion. She also said that they had owned the property since 1993, but were not sure whether they would try to sell it in the future.

the criteria for granting a variance. Therefore, according to the Maykos, the Commissioners engaged in unlawful procedure.

But the Maykos do not show what procedure was unlawful or what prescribed process the Commissioners failed to follow. Considering the testimony of a witness and deciding what weight to give to that testimony certainly is not unlawful and does not violate required process. *See Total Outdoor Corp. v. City of Seattle Dep't of Planning & Dev.*, 187 Wn. App. 337, 345-46, 348 P.3d 766, *review denied*, 184 Wn.2d 1014 (2015) (indicating the factfinder determines the credibility of witnesses and weight given to evidence). And even if the Commissioner's question about the Maykos' intentions to sell the property violated proper procedure and process, such a violation was harmless. There is no evidence that the Commissioners denied the Maykos' variance based on their response to the question about selling the property.

Accordingly, we hold that the Commissioners did not engage in unlawful procedure or fail to follow prescribed process under RCW 36.70C.130(1)(a).

E.      VIOLATION OF FIFTH AMENDMENT RIGHTS

The Maykos argue that they are entitled to relief under RCW 36.70C.130(1)(f) because the Commissioners' denial of the variance constitutes a taking without just compensation in violation of the Fifth Amendment to the United States Constitution. We disagree.

A LUPA petitioner is entitled to relief under RCW 36.70C.130(1)(f) if "[t]he land use decision violates the constitutional rights of the party seeking relief." As noted above, we review de novo whether a land use decision violates a petitioner's constitutional rights. *Whatcom County*, 171 Wn.2d at 426.

The Fifth Amendment takings clause states "nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V. The United States Supreme Court has said "when the owner of real property has been called upon to sacrifice *all* economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1019, 112 S. Ct. 2886, 120 L. Ed. 2d 798 (1992).

The Maykos argue that by denying their variance request, the Commissioners denied them any economically viable use of their property, resulting in a total taking without compensation. But the Maykos have not shown that they have been denied "*all* economically beneficial uses" of their property. *Id.* at 1019. The CARL ordinance does not prohibit the construction of all occupiable improvements like the challenged law in *Lucas*. The Maykos' denied variance request was limited to a 2,400 square foot house. The Maykos may still be able to obtain a variance to build a different type of dwelling or structure. And they may be able to park a recreational vehicle on their property or make some other use of the property.

Further, the CARL ordinance contains a "Viable Use Exception" that states:

> If the application of this Ordinance would result in denial of all economically viable use of a property, and if such economically viable use of the property cannot be obtained by consideration of a variance pursuant to subsection 3.J. to one or more individual requirements of this Ordinance, then a person may seek a viable use exception from the standards of this Ordinance.

PCO 147, § 3(K). A viable use exception "shall" be granted if the applicant can show (1) the ordinance denies all economically viable use so that there is no economically viable use with a lesser impact on critical areas, (2) the proposed development does not pose a threat to the public

health and safety, and (3) any proposed modification to critical areas and resource lands will be the minimum necessary to allow economically viable use of the property. PCO 147, § 3(K).

The Maykos have not shown that the Commissioners' denial of their variance resulted in denial of all economically beneficial uses of their property. And even if the denial of the variance did result in a complete loss of all economically beneficial use of their property, they might be able to obtain relief through a viable use exception under section K of the CARL ordinance. Accordingly, we hold that the Commissioners did not violate the Maykos' constitutional rights.

F.      COSTS AND ATTORNEY FEES

The County assigns error to the superior court's award of costs and statutory attorney fees to the Maykos under RCW 4.84.010. Because we reverse the superior court, we vacate the superior court's award of costs and statutory attorney fees.

The Maykos request reasonable attorney fees on appeal, but we decline to consider this request because they are not the prevailing party on appeal. The County requests an award of appellate costs, and we award those costs to the County as the prevailing party. RAP 14.2.

CONCLUSION

We reverse the superior court and affirm the Commissioners' denial of the Maykos' request for a variance.

18

No. 48308-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
MAXA, A.C.J.

We concur:

_____
JOHANSON, J.

_____
MELNICK, J.